3 So.2d 569

**McHUGH v. STATE.**

**8 Div. 15.**

Court of Appeals of Alabama.

May 27, 1941.

Rehearing Denied June 30, 1941.

Beddow, Ray & Jones, of Birmingham, and Jas. E. Smith, Jr., of Tuscumbia, for appellant.

Thos. S. Lawson, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The facts in this case disclose an unfortunate accident which resulted in the tragic death of two estimable citizens; and, likewise, the grievous and serious injury of this appellant, who the testimony shows was a young married man about 31 years of age. The three victims of the accident were strangers and wholly unknown to each other, that is to say, the deceased Mr. Paul Sockwell, and his wife, also deceased, were total strangers to this appellant, and he to them. This fact alone is sufficient upon which to determine that the death of the two unfortunate persons, above mentioned, was not due to any intentional act or conduct of the defendant. However, no such insistence was made upon the trial in the lower court, nor presented or urged, on appeal in this court.

The indictment in this case originally contained four counts. The trial court, on its own motion, eliminated count four of the indictment, and the case was put to the jury on the remaining three counts. Each of said counts charged this appellant with the offense of murder in the second degree. Before entering upon the trial the defendant, in answer to the indictment, interposed demurrers to all of said counts separately and severally. The demurrer was based upon 40 separate and distinct grounds which we will not here enumerate as not being necessary to the conclusion we have reached and will announce. In passing, however, we will state upon investigation of the questions, the counts in the indictment could have been worded differently to good effect, and not "jumbled up" in its phraseology as does appear. As to this we are inclined to the opinion that the indictment as appearing in this record probably may be said to come within the provisions of Section 4529 of the Code, Code 1940, Tit. 15, § 232, which reads as follows: "The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended; and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; and in no case are the words 'force of arms' or 'contrary to the form of the statute' necessary."

The trial resulted in the conviction of the defendant of the offense of manslaughter in the first degree; the jury returned the following verdict, viz: "We the jury find the defendant guilty of manslaughter in the first degree and fix his punishment at imprisonment in the State Penitentiary for a term of one year." Whereupon, the court adjudged the defendant guilty of manslaughter in the first degree, as the law requires, but instead of sentencing him to imprisonment in the penitentiary for one year in accord with the verdict of the jury, supra, he was sentenced to hard labor for the county for a period of one year, as the punishment, and to 194 days' hard labor for the county to pay the costs of the proceedings at the rate of 75 cents per day. In sentencing the defendant to hard labor, instead of to the penitentiary, as the verdict of the jury prescribed, the court was correct, as has many times been held, and as the statutes expressly provide. That portion of the verdict fixing the imprisonment in the penitentiary was surplusage, and the trial court so held. The jury acted within its province by fixing the period of punishment, but its attempt also to provide the place of punishment was futile; as this is solely within the province of the court. The quoted surplusage in the verdict however did not affect the validity of the verdict, and, as stated, the action of the court in this connection was regular and without error. Washington v. State, 117 Ala. 30, 23 So. 697. Section 5265 of the Code 1923, Code 1940, Tit. 15, § 325, provides, among other things: In all cases in which the imprisonment is twelve months or less, the defendant must be sentenced to imprisonment in the county jail, or to hard labor for the county.

The tragic accident referred to occurred about 7:20 P. M. at a street intersection in the City of Sheffield. This court has been furnished several large photographs portraying accurately, the record informs us, the scene of the accident and physical facts, as they appeared when the photos were taken. These photographs have been of valuable assistance to this court in the consideration of the facts and circumstances attendant upon the collision of the two vehicles aforesaid. There was only one eye witness to the accident; said witness being Riley McHugh, the defendant. He testified in a straight forward manner as to all the facts leading up to the accident. In considering his testimony we have applied our constant experience of many years, and are firmly convinced of the verity of every material statement testified to by him on the trial of this case. These statements appear reasonable in every respect, and are also supported and borne out by the proven material physical facts, shown not only by the evidence, but also as clearly appears from the large photographs above referred to; and as a result this court is in accord with the following insistences of appellant's counsel where in their brief the following statements appear:

"There is not a scintilla of evidence in the case at bar that could possibly indicate any act or omission on the part of the Appellant which could amount to more than simple negligence. The Appellant denies strenuously that he was guilty of simple negligence. There was not an eye witness to the homicide other than Riley McHugh. He states that his speed was within the law. There is no evidence to the contrary. He states that he had the right of way because he reached the intersection first. There is no evidence to the contrary. He states that he was on the right hand side of the highway and was attempting to make a right hand turn, which was his lawful privilege. There is no evidence to the contrary. Riley McHugh testified that the deceased's automobile was traveling at a rapid rate of speed. There is no evidence to the contrary. Riley McHugh states that the automobile of the deceased was on the left side of the highway. There is not a scintilla of evidence in the record to the contrary."

We are not impressed with the emphatic statements of the Attorney General as to the facts, and as to how the accident occurred. Said statements are not sustained by the testimony. The insistence in this connection, that this court should determine and hold that "the defendant was so drunk that he could not realize the full significance of his act," is not in accord with our views and is so farfetched and unwarranted as to need no discussion. The evidence on the question as to whether or not the defendant at the time of the collision was under the influence of intoxicating liquor is preponderately against such being the fact. A large number of disinterested witnesses who had actual contact with defendant at different times during the late afternoon, and up to within a few minutes before the accident occurred, testified that the defendant was not intoxicated, nor did he show any signs of having been drinking. He,

defendant, admitted that at about 6:30 o'clock he drank half of an individual (miniature) bottle of gin (about 1 ounce) with an acquaintance in the Broadway Palace, a legal place for selling intoxicating liquor, in the City of Tuscumbia, Alabama. He further testified that was the only drink he had had during the entire day. And there was no evidence to the contrary. After the collision, in which, as stated, the defendant narrowly escaped being killed, and immediately after he had been extricated from his overturned and demolished truck, certain adverse witnesses testified in their opinion he appeared to be intoxicated. It would certainly be hazardous to assume the correctness of these conclusions of said witnesses when such conclusions were based solely upon certain responses defendant gave in answer to questions propounded to him just immediately after he had been rescued from the demolished truck. At that time he necessarily was suffering from great shock; his person mangled and bleeding, as affirmatively appeared, he was not sufficiently in possession of his mental faculties to be able to intelligently and correctly respond to the numerous questions put to him by parties present after the wreck. Or, as better stated, in brief, by appellant's counsel: "Numerous witnesses had testified that Appellant had worked during the afternoon free of intoxicating liquor with the exception of Mr. Wright, a kinsman of the deceased. Not a single man or woman in behalf of the State or the defense tells this court that this Appellant had drunk a drop of intoxicating liquor prior to the accident, except this small portion of gin served by Mr. Knight, bought by Mr. Samms and consumed by the Appellant at a social drinking table. So, while battered and bruised and while in unfriendly hands, is Riley McHugh to be blamed because of what he said."

As to the physical and mental condition of the defendant, State witness L. M. Thompson testified that he, witness, and another person, got the defendant out of the truck, and this witness, being asked about some conversation had "at the time, testified as to the condition of the defendant. It did not seem to make an impression. He didn't seem to grasp the situation at all; it didn't seem to impress him at all."

It is not amiss we think to quote further from the brief of appellant wherein it is stated: "The record shows that the deceased had left his home with his wife for the purpose of attending an oyster supper further north along the highway. He left his home about seven o'clock P. M. Supper was due about six or six-thirty, P. M., as shown by the record. It was six or more miles from his home to the home of his daughter where he and his wife were expected to join in the oyster supper. The Appellant testified that the automobile of the deceased was traveling at a high rate of speed; that it was traveling about fifty miles per hour. While that is not a tremendous rate of speed, it does explain why the automobile of the deceased traveled 100 feet after leaving the highway, scrubbing the ground the entire distance and then turned over. The Appellant also testified that he was traveling in an Easterly direction without intention of crossing the intersection; that it was his purpose to turn to the right and travel toward the home of the deceased. Appellant further testified that he approached the intersection at a rate of about fifteen miles per hour; that he was traveling slightly upgrade; that the roads intersect practically at right angles; that weeds and shrubbery were on his right and that when he undertook to make his right hand turn on the right hand side of the highway where he had a right to be, that he suddenly found the automobile of the deceased traveling North with bright lights on the wrong side of the highway at a high rate of speed, and that Appellant was suddenly confronted with an unusual hazard which he undertook to escape with the means at hand."

The fundamental law of this State accords to a defendant, if he so elects, the right to testify in his own behalf. When a person accused of crime so elects, and does testify no court or jury has the right to capriciously set aside his testimony and likewise refuse to consider it. In this case it affirmatively appears this course was pursued. In the case there was no dispute as to the facts of the collision as given by the defendant, and if said facts were true, it affirmatively appears that in this entire transaction the defendant was guilty of no wrong in the eyes of the law. The physical facts adduced appear to corroborate the defendant in his every statement as to how the accident occurred. The relative positions of the two cars, tracks, etc., indicate to our minds conclusively, as it should to every reasonable disinterested person, that the Sockwell car ran

at great speed and with great force into the heavier loaded truck, the impact knocking said truck over and over and into the brick wall of the nearby store building, and then swerved for a distance of 95 feet and overturned, resulting in the untimely death of the two deceased persons named in the indictment.

The two appellate courts of this State have, on innumerable occasions, and in many cases, definitely settled the law applicable to the case at bar. We forbear a repetition of these propositions here as being unnecessary, and will content ourselves by citing some of the authorities wherein all the propositions of law here involved have been definitely determined and announced.

We are of the opinion that the court erred in refusing to defendant the general affirmative charge as to manslaughter in the first degree. Barnett v. State, 27 Ala. App. 277, 171 So. 293; Broxton v. State, 27 Ala.App. 298, 171 So. 390; Pratt v. State, 27 Ala.App. 301, 171 So. 393; Willis v. State, 29 Ala.App. 365, 197 So. 62.

The action of the trial court in overruling and denying defendant's motion for a new trial is properly presented here for review. Said motion is based upon about 30 separate and distinct grounds, many of which appear to be well taken, the exception reserved to this action of the court is sustained.

Reversed and remanded.

SIMPSON, J., not sitting.