77 So.2d 503

**Ralph Thomas TURNER**

v.

**STATE.**

7 Div. 296.

Court of Appeals of Alabama.

Oct. 1, 1954.

Rehearing Denied Nov. 30, 1954.

William C. Sullivan, Talladega, for appellant.

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Owen Bridges, of counsel, for the State.

PRICE, Judge.

The indictment charges murder in the second degree. Defendant was convicted of manslaughter in the first degree and sentenced to the penitentiary for ten years.

The homicide arose out of an automobile collision between a 1941 Ford coupe driven by defendant and a Pontiac in which deceased was riding.

According to the State's evidence the collision occurred about 3:00 P. M. on Sunday, June 7, 1953. Defendant's car was traveling in an easterly direction and the Pontiac was headed west. Shortly before the wreck defendant and his two male companions had consumed a pint of white whiskey and defendant was intoxicated.

The road was unpaved and was about seventeen feet wide. On the south side the mountain came down to the road and there was a bank and a very narrow shoulder. On the north side the shoulder was wider.

The automobile in which deceased was riding was operated by his son-in-law, Kelton C. Horn. The driver's young son and deceased were riding in the front seat with him. Mrs. Horn and two other children were occupying the back seat. Mr. Horn was operating his car at a speed of 20 to 30 miles per hour and he first saw defendant's car about 100 feet away as it skidded around a curve. The Ford was traveling between 55 and 60 miles an hour, on the wrong side of the road, with its left wheels off the left side of the road for some distance. The automobile appeared to be out of control, and it crashed into the Pontiac so that the right front ends of both cars were considerably damaged. Deceased received a brain injury and his chest was crushed. He died without regaining consciousness.

Mr. Horn testified his car was two feet right of the center of the road when he first saw defendant and remained in that position until the impact. The State, after proper predicate, introduced a statement by defendant made at the jail on Sunday night, in which he said he was driving a borrowed car and "I have not had any driver's license in four years. They were taken away from me," and that he was driving in the middle of the road when he first saw the Pontiac.

Appellant testified he was driving the Ford and he was 75 to 100 feet from the Pontiac when he first saw it. At that time the Pontiac was in the center of the road and until the impact it kept coming straight at him at a rate of 35 to 40 miles an hour. Defendant applied his brake and being prevented from going off the right side of the

road by the high bank, he turned his car off of the left side of the road. The right front fenders of the two cars collided. He admitted on cross-examination that he and his companions had drunk part of a pint of whiskey, but not a full pint and they drank the last of it at one o'clock. When he saw the other car he was driving around 30 miles an hour, and his car was almost in the middle of the road. He denied making some of the statements attributed to him at the jail, but admitted saying that he was driving in the middle of the road, and had not had a driver's license in four years, it had been taken away from him.

Showings were introduced for absent witnesses Glenn and Haynes to the effect that if present they would testify the Pontiac was in the middle of the road, that there was a steep bank on the right and defendant turned his car to the left, and that defendant was not under the influence of intoxicants.

Defendant also introduced evidence of his good character.

■ "In order to constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence." Harrington v. State, 83 Ala. 9, 3 So. 425, 428.

■ "If one drives an automobile in such a manner as to evidence a wanton and reckless disregard of human life at the time and place and under the circumstances, and such driving proximately causes the death of another, the act would be manslaughter in the first degree whether the positive intention to kill is proven or not. Reynolds v. State, 24 Ala.App. 249, 134 So. 815, 816; Graham v. State, 27 Ala.App. 505, 176 So. 382; Jones v. State, 33 Ala.App. 451, 34 So. 2d 483." Gurley v. State, 36 Ala.App. 606, 61 So.2d 137, 139.

■ Appellant's counsel argues that the trial court erred in refusing to give at defendant's request the general charge as to manslaughter in the first degree because there was an entire absence of evidence tending to prove that defendant intentionally ran his automobile against the automobile in which deceased was riding, and he cites us to the cases of Curlette v. State, 25 Ala. App. 179, 142 So. 775; Barnett v. State, 27 Ala.App. 277, 171 So. 293; Willis v. State, 29 Ala.App. 365, 197 So. 62; McHugh v. State, 30 Ala.App. 231, 3 So.2d 569, and upon the authority of those cases argues that to justify the submission of the question of a wanton killing to the jury there must be "actual knowledge, or that which in law is the equivalent thereto, of the peril of the person injured, coupled with the conscious failure to act so as to avoid the injury." This line of cases was cited and followed in Rainey v. State, 31 Ala.App. 271, 17 So.2d 683. The Supreme Court, on certiorari, corrected that opinion by stating:

"We note that in the opinion of the Court of Appeals reference is made to the fact that in wantonness the accused must have actual knowledge that another occupies a position of peril. True, it is sometimes so stated in the cases they cite, where other aspects of wantonness were not involved. Copeland v. Central of Ga. Ry. Co., 213 Ala. 620, 105 So. 809, and in Pratt v. State, 27 Ala.App. 301, 171 So. 393. But it is also as well settled that it is culpable wantonness when the accused has knowledge that some person (any person) is likely to be in a position of danger and with conscious disregard of such known danger, he recklessly proceeds on a dangerous course which causes the disaster, though he may not know whether any person is actually in danger. Godfrey v. Vinson, 215 Ala. 166(6), 110 So. 13; 15 Ala.Dig., Negligence, p. 301, ☞11." Rainey v. State, 245 Ala. 458, 17 So.2d 687, 689.

After a careful consideration of the evidence we are of the opinion it was sufficient to justify the submission of a wanton killing to the consideration of the jury and to sustain the judgment of conviction, and requested charge 7 was properly refused.

Refused charge 10 ignores a consideration of the evidence.

In Tidwell v. State, 70 Ala. 33, the law is stated: "If by misfortune or misadventure, while in the performance of a lawful act, exercising due care, and without intention to do harm, human life is taken, the law will excuse. There must, however, be a concurrence of these facts, and the absence of any one will involve in guilt."

Charge 14 was abstract.

In order for the jury to find that appellant was "in the performance of a legal act" they would have to ignore completely the defendant's own testimony that he was driving without a license, Tit. 36, Sec. 70, Code, and was driving in the middle of the road. Tit. 36, Sec. 9, Code. For this reason, if for no other, the charge was properly refused.

Written charge 27 is in the language found in the body of the opinion in the case of Harrington v. State, 83 Ala. 9, 3 So. 425.

"It is a mistake to suppose that expressions in judicial opinions, properly there used, can be made to serve as clear, succinct statements of the law in special charges to the jury." Wear v. Wear, 200 Ala. 345, 76 So. 111, 114. See also Holloway v. State, 258 Ala. 558, 64 So.2d 121. Moreover, "a charge which merely states an abstract proposition of law without instructing the jury its effect upon the issues in the case on the trial may be refused without error." Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388, 391.

Other charges refused to defendant which were correct propositions of law were substantially covered by the court's oral charge.

There being no reversible error in the record, the judgment is affirmed.

Affirmed.