101 So.2d 553

### Robert C. HANBY

v.

### STATE.

I Div. 712.

Court of Appeals of Alabama.

April 9, 1957.

Rehearing Denied April 30, 1957.

Affirmed After Remandment March 18, 1958.

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

Robt. E. Hodnett, Jr., Tonsmeire & Hodnett, Mobile, for appellant.

CATES, Judge.

Robert C. Hanby was tried by a jury in the Mobile Circuit Court on a one count indictment for voluntary manslaughter for the killing of Robert Manning with an automobile. The jury found him guilty of first degree manslaughter and fixed his punishment "at not more than one year."

The court adjudged the defendant guilty as charged and sentenced him to the penitentiary for one year. The State confesses error in that imprisonment in the penitentiary is incorrect, Code 1940, Title 15, § 325, even though apparently called for under Title 14, § 322. This error, of course, could be cured by remandment for proper sentence.

Reversible error is shown in that the court should not have received the verdict of the jury because it prescribed an indeterminate sentence which is not a legal punishment for manslaughter.

"* * * It has never been supposed that the jury might in such cases leave the amount of the punishment to be fixed by the court. This court held, in Bankhead v. State, 124 Ala. 14, 26 So. 979, that in all cases of unlawful homicide the punishment must be fixed by the jury trying the case, and that the court could not relieve the jury of that responsibility." Bates v. State, 170 Ala. 26, 54 So. 432.

We do not consider as pertinent the case of Lewis v. State, 51 Ala. 1, where it was not error for the jury to "recommend" a sentence of twenty years instead of fixing the sentence. Where a fine could be imposed only by the jury, a judgment for a fine without a supporting verdict was said to be "without warrant of law," Nelson v. State, 46 Ala. 186; see also Nemo v. Commonwealth, 2 Gratt., Va., 558. In Georgia, under an indeterminate sentence law, it has been held that the failure of the jury to prescribe both the upper and lower limits of the term brings about reversible error. Camp v. State, 187 Ga. 76, 200 S.E. 126.

The need for a definite prescription of time is so that the warden of the penitentiary or the jailer will know how long he may lawfully keep the convict in custody. This we do not have here.

The judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.

### After Remandment

About 5:00 p. m., March 15, 1955, Hanby was driving a 1952 Oldsmobile westwardly on Wasson Street in Mobile. Robert Manning was driving a motor scooter northwardly on Turner Road. The two vehicles seemingly entered the intersection of the two thoroughfares at about the same moment and collided. Manning died later from the injuries from the wreck.

Kenneth Patrick, driver of a dry cleaning truck, testified for the State that just before the collision he was calling on his route along Wasson Street some five hundred feet from the junction of Wasson and Turner:

"This car came up the road at approximately sixty-five miles an hour and when he got to where I was at he went completely off the road up in the edge of the school yard and almost hit a telephone post and back on to the road, off to the other side and ran two cars off of the road, and I ran out into the street * * *

* * * * * *

"I ran out into the street and saw the fellow go across the intersection and it was awful dusty, I knew he had had a wreck.

* * * * * *

"I heard a collision."

Mr. Alvin Tew, who lived on Wasson Street near the intersection, testified (in part):

"I was sitting out in the yard and I heard some tires squealing, me and my wife, and I looked up the street and I seen an automobile coming, and two of his wheels were off the highway; I guess he run about two hundred feet and he got back on the highway, I got up, I was sitting down and I got up and looked, and the next thing I knew I seen a motor bike passing by and this car hit it about that time.

"Q. Hit the motor bike, sir? A. Yes sir.

"Q. What happened after it struck the motor bike? A. Well, it looked like it throwed that boy four or five feet above the top of the car.

"Q. Over the car itself? A. No, right up front of it.

"Q. Right up in front of the car? A. Yes sir.

* * * * * *

"* * * now, you say you saw this car coming down the road, what

street, what road was he coming down, sir? A. Wasson Street.

"Q. Wasson Street; how far did you have an opportunity to observe it?, A. I seen it all the way.

"Q. In your opinion, what was the speed of that automobile just prior to the impact with the boy?

"Defendant objects to that, he said I seen it all the way, and I submit to the Court that that is not a statement of anything definite on which he can predicate an opinion—

"Q. We will qualify him; how far down Wasson Street did you observe the car before the point of impact with the boy? A. From where I was standing?

"Q. Yes? A. Well, about five hundred feet.

"Q. About five hundred feet? A. Yes sir.

"Q. In your opinion then what was the speed of the automobile at the point of collision?

"Defendant makes the same objection. The court overruled the objection, and Defendant reserved an exception to the ruling of the Court.

"Q. All right, answer the question? A. I would say approximately, about sixty miles an hour.

"Q. About sixty miles an hour."

Mr. C. T. Bradley, Highway patrolman, testified:

"When we arrived at the scene of the accident the first thing we come upon was Mr. Hanby's car laying bottomside up and he partly in it on the railroad, and immediately we went on down to where the kid was laying in the road and saw that Doctor Green was present at the time and that he was taking care of the injured there, and then I went back to the car and helped them load Mr. Hanby in the ambulance and they took him on to the hospital.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did you notice any odor of alcohol? A. Yes sir, I did.

"Q. Where was that, was that at the car? A. Yes sir, that was while we were loading him in the ambulance down there close quarters with him.

"Q. How strong was it, Officer Bradley? A. Very strong.

"Q. Very strong? A. Yes sir.

"Q. Did you later on or at any other time notice the odor of alcohol again? A. Yes sir, we again, approximately about three hours later there was still the odor of alcohol on his breath.

"Q. Where was that? A. That was at the Prichard Police Station.

"Q. At the Prichard Police Station? A. Yes."

Relating Hanby's statement when being taken from the police station to the county jail, Bradley went on:

"He said that the kid come out of nowhere, the best that he could figure out, that he was right on him before he saw him and that he did everything he could to avoid hitting him.

"Q. Yes sir; did he say anything about alcohol or any drinking he had done, sir? A. Yes sir, I asked him had he been drinking and he said yes he had.

"Q. Did he say how much he had had? A. He said he had drank almost a pint, a half of pint of one and part of a half pint of another.

"Q. A half of pint of one and part of a half of pint of another? A. Yes sir."

The testimony for the defendant was to the effect that he had not had a drink

in over three years; he had taken some medicine that day. Several witnesses who saw him and were near enough to smell his breath during the afternoon, stated positively they had detected no odor of alcohol. There was other and further evidence that he was driving at a reasonable speed at the time of the collision, and that Manning was himself to blame.

This conflict presented a jury question.

The defendant excepted twice to the court's oral charge. The first exception reads:

"I would like to respectfully except to the Court's charge in this regard, that the Court charged the jury on manslaughter in the first and second degrees, but did not charge the jury with respect to reckless driving.

"Further, I would like to request the permission to have the Reporter to read the words specifically of the Court in the first part of the Court's charge pertaining to manslaughter in the first degree, if he drives an automobile in a reckless or wanton manner and death results, it is manslaughter in the first degree. May I have the Court Reporter to read that part in order that I may put my exception in shape?

"By The Court: I think that handles it. The Court's charge, I will stand on that."

The second exception brought an extension of the oral charge to which no further exception was taken. Accordingly, under the principle given in McFarling v. State, 35 Ala.App. 191, 45 So.2d 322, and in view of the defense counsel's satisfaction as to the extended oral charge (which we infer from the absence of any further exception taken to the oral charge as extended), the first exception is the only one reviewable on appeal.

The trial judge had instructed on first degree manslaughter:

"In order to constitute manslaughter in the first degree there must be therein a positive intention to kill or an act of violence, of wanton or recklessness, from which ordinarily in the usual course of events death or great bodily harm may be a consequence. Manslaughter, therefore, in the first degree is when a man drives an automobile, as the charge is in this case, in a reckless manner, in a wanton manner, without regard to the safety or life of others, and as a result, proximate result of that death ensues, it would constitute manslaughter in the first degree. Now, if this defendant drove an automobile in such a manner as to evidence a wanton and reckless disregard of human life at the time and place and under the circumstances, and such driving proximately caused the death of another, the act would be manslaughter in the first degree, whether there was a positive intention to kill or not. It is well settled that culpable wantonness, that is when the accused has knowledge that some person, or any person, is likely to be in a position of danger, and with conscious disregard of such known danger, he recklessly proceeds on a dangerous course which causes the disaster, though he may not know at the time whether any person is actually in danger; I will come to it in a moment with respect to the evidence, but that's manslaughter in the first degree."

Our lawmakers have divided manslaughter into felony and misdemeanor, Code 1940, T. 14, § 320, reading as follows:

"Manslaughter, by voluntarily depriving a human being of life, is manslaughter in the first degree; and manslaughter committed under any other circumstances, is manslaughter in the second degree."

Section 322 reads:

"Any person who is convicted of manslaughter in the first degree shall,

at the discretion of the jury, be imprisoned in the penitentiary for not less than one nor more than ten years, and any person who is convicted of manslaughter in the second degree shall, at the discretion of the jury, be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than one year, and may also be fined not more than five hundred dollars."

Harno's Casebook on Criminal Law (3rd Ed.) cites an English case involving manslaughter with a motor vehicle, Andrews v. Dir. of Pub. Pros. (1937), A.C. 576, an appeal to the House of Lords from the Court of Criminal Appeal, wherein Lord Atkin, in speaking to the judgment, had occasion to observe:

"My Lords, of all crimes manslaughter appears to afford most difficulties of definition, for it concerns homicide in so many and so varying conditions. * * *"

And after alluding to distinctions drawn between criminal and civil negligence and the pejorative epithets used by judges to cause the jurymen to seek out the defendant's state of mind (for example, "culpable," "criminal," "gross," "wicked," "clear," "complete"), he continues:

"* * * The principle to be observed is that cases of manslaughter in driving motor cars are but instances of a general rule applicable to all charges of homicide by negligence. Simple lack of care such as will constitute civil liability is not enough: for purposes of the criminal law there are degrees of negligence: and a very high degree of negligence is required to be proved before the felony [Both degrees of manslaughter are felonious in England; the punishment running up to life, Archbold, 33rd Ed. § 1610.] is established. Probably of all the epithets that can be applied 'reckless' most nearly covers the case. It is difficult to visualize a case of death caused by reckless driving in the connotation of that term in ordinary speech which would not justify a conviction for manslaughter: but it is probably not all-embracing, for 'reckless' suggests an indifference to risk whereas the accused may have appreciated the risk and intended to avoid it and yet shown such a high degree of negligence in the means adopted to avoid the risk as would justify a conviction. If the principle of Bateman's case [Rex v. Bateman (1925), 19 Cr.App.R. 8] is observed it will appear that the law of manslaughter has not changed by the introduction of motor vehicles on the road. Death caused by their negligent driving, though unhappily much more frequent, is to be treated in law as death caused by any other form of negligence; and juries should be directed accordingly."

In Harris v. State, 36 Ala.App. 620; 61 So.2d 769, 771, we find Carr, P. J., writing:

"To sustain a conviction of manslaughter in the first degree the burden was not cast on the prosecution to prove that the defendant intentionally drove the truck against or over the deceased. If the evidence showed, by the required proof, that while driving the vehicle in a wanton and reckless manner with a disregard for human life, he killed the decedent, this would constitute the indicated offense. That is to say, there must be either a positive intention to kill or an act of violence from which ordinarily, in the usual course of events, death or great bodily harm may result. Harrington v. State, 83 Ala. 9, 3 So. 425; Reynolds v. State, 24 Ala.App. 249, 134 So. 815; Jones v. State, 33 Ala. App. 451, 34 So.2d 483.

"In the case of Rainey v. State, 245 Ala. 458, 17 So.2d 687, 689, the Supreme Court, on certiorari, corrected a statement appearing in the opinion of

this court, 31 Ala.App. 271, 17 So.2d 683. We quote:

" 'We note that in the opinion of the Court of Appeals reference is made to the fact that in wantonness the accused must have actual knowledge that another occupies a position of peril. True, it is sometimes so stated as in the cases they cite, where other aspects of wantonness were not involved. Copeland v. Cent[ral] of G[eorgi]a Ry. Co., 213 Ala. 620, 105 So. 809, and in Pratt v. State, 27 Ala.App. 301, 171 So. 393. But it is also as well settled that it is culpable wantonness when the accused has knowledge that some person (any person) is likely to be in a position of danger and with conscious disregard of such known danger, he recklessly proceeds on a dangerous course which causes the disaster, though he may not know whether any person is actually in danger. Godfrey v. Vinson, 215 Ala. 166(6), 110 So. 13; 15 Ala[bama] Dig[est] Negligence, ☞ 11, p[age] 301.' "

Of like import is Judge Price's thoroughgoing opinion in Turner v. State, 38 Ala. App. 73, 77 So.2d 503, 505, wherein, concerning this phase of homicide, she concluded:

"After a careful consideration of the evidence we are of the opinion it was sufficient to justify the submission of a wanton killing to the consideration of the jury and to sustain the judgment of conviction, and requested charge 7 (affirmative as to first degree manslaughter) was properly refused." (Parenthetical matter supplied.)

■ We hold that the portion of the court's oral charge quoted above to be unexceptionable.

■ Charge 23 refused the defendant was, in effect, that the deceased's being contributorily negligent would excuse Hanby of manslaughter, voluntary or involuntary. This court, in Thornton v. State, 21 Ala.App. 323, 108 So. 80, cited authorities

for its holding that contributory negligence is no defense to a charge of involuntary manslaughter; if this be so, then its consideration as a legal excuse for voluntary manslaughter is so much the feebler. Evidence of the deceased's negligence is always admissible on the issue of whether or not death was brought about by the agency of the defendant. See Judge Samford's able discussion in Broxton v. State, 27 Ala.App. 298, 171 So. 390. The criminal law merely fails to absolve where there is a "both to blame" encounter which causes death.

■ There was no error in refusing charge 23. The defendant's brief states that he is not attempting to set up contributory negligence. He contends that he was nowise responsible for Manning's death. However, after reading the testimony of the State's witness, Tew, we think this was a jury question.

■ Charge 34 refused Hanby is verbatim charge 30 referred to in Crisp v. State, 21 Ala.App. 449, 109 So. 282. There was no error in refusing charge 34, since (no matter what may be the merits of the "gross" and "simple" negligence aspects (if any) of manslaughter) the trial judge gave charge 31 which covered the substance of 34. The same principle of a given charge (No. 26) sufficing avoids error in refusing No. 35 (taken from No. 12 approved in Hammell v. State, 21 Ala.App. 633, 111 So. 191).

The oral charge adequately defined manslaughter in the second degree and hence the refusal of charge 38 was without error.

■ During the examination in chief of Mrs. E. E. Gartman, a witness for the prosecution, the following occurred:

"Q. Now, from what you saw, from his actions and his manner of talking and conversation, will you tell the jury whether in your opinion he appeared to be drinking whiskey or beer or any intoxicants?

"Defendant objects to the question, the proper predicate has not been laid

to show that the lady is any expert to give any opinion on that. I submit she can testify to what she saw he did and the jury can draw its own conclusions.

"By The Court: She has a right to testify whether or not in her opinion he was drunk.

"By Mr. Booth: I asked what he appeared to be, did he appear to be under the influence of intoxicants.

"Defendant reserved an exception to the ruling of the Court.

"Ans. He was under the influence of something because he wouldn't have stood up there and argued with me about buying a bunch of flowers to set out."

Durham v. State, 38 Ala.App. 341, 83 So. 2d 260, does not apply here; Dozier v. State, 130 Ala. 57, 30 So. 396 (headnote 3) does. There was no error in the question.

We have reviewed the charges requested by Hanby which were refused by the trial judge. Upon comparing them with the written charges given and the oral charge, we consider there was no injury to the substantial prejudice of any right of the defendant by reason of their refusal. The written and oral instructions adequately covered the elements of the offense in its grades and the theories of defense in the light of the evidence. Many of the charges fall within the influence of the apt language of that great scholar of jury instruction, Carr, P. J., who, in Holloway v. State, 37 Ala.App. 96, 64 So.2d 115, 120, said:

"The mere fact that a tendered written instruction is copied from an opinion of an appellate court does not assure its acceptability. Britling Cafeteria Co. v. Irwin, 229 Ala. 687, 159 So. 228; Maxwell v. State, 32 Ala.App. 487, 27 So.2d 804.

"The charge in question is not hypothesized on the evidence. It is merely a statement of a legal principle without any instruction as to the effect upon or application to the issues in the case. Edwards v. State, 205 Ala. 160, 87 So. 179; Johnson v. Louisville & N. R. Co., 220 Ala. 649, 127 So. 216; Thomas v. State, 34 Ala.App. 470, 41 So.2d 435."

Charge 37 tendered by Hanby was properly refused because it qualifies the presumption of innocence as a matter "not to be disregarded." This modification is objectionable in Alabama because our cases consider that a point may be reached in the jury's deliberation where the weight of the considered evidence compels the presumption of innocence to be disregarded. McClain v. State, 182 Ala. 67, 62 So. 241; Booth v. State, 247 Ala. 600, 25 So.2d 427; and Clark v. State, 36 Ala.App. 159, 57 So. 2d 375.

This charge differs from charge 8 discussed in Perry v. State, 37 Ala.App. 683, 74 So.2d 619; 53 Am.Jur., Trial § 687.

We have reviewed the entire record and find no error save that in the sentence as covered above. Therefore, the judgment below is affirmed, except that the cause is remanded there for proper sentence.

Affirmed but remanded for proper sentence.