109 So.2d 749

**Samuel MADISON**

v.

**STATE.**

**2 Div. 956.**

Court of Appeals of Alabama.

Oct. 7, 1958.

Rehearing Denied Oct. 28, 1958.

Robt. P. Upchurch and Ira D. Pruitt, Livingston, for appellant.

John Patterson, Atty. Gen., and Geo. Young, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was convicted of manslaughter in the first degree.

The homicide arose out of a collision between a Buick automobile driven by defendant and a Ford automobile in which deceased, Sally Smith, was a passenger. The collision occurred on U. S. Highway 11, in Sumter County, Alabama, around 8:00 p. m., February 2, 1957.

The State's evidence tended to show that defendant's automobile left the highway and struck the Ford, which was parked parallel to the highway in front of a small cafe. Deceased and four other persons were sitting in the Ford. The State's evidence was to the effect that no part of the Ford automobile was on the paved portion of the highway at the time of the collision.

The defendant's testimony was to the effect that he struck the Ford when it backed into the highway directly in front of his automobile, without showing any lights, and that he was travelling at a legal rate of speed.

The State's evidence further tended to show that defendant immediately left the scene of the collision, and was apprehended at his home by officers around midnight, at which time, according to their testimony, he admitted he was the driver of the Buick involved in the wreck which resulted in the death of deceased. He also admitted that he drank beer in the afternoon.

Defendant admitted leaving the scene of the accident, but denied that he had been drinking.

It is defendant's insistence that the court erroneously permitted certain evidence to go to the jury, which was but mere opinion or conclusion of the witnesses. The evidence complained of is as follows:

H. A. Patterson, a State Highway Patrolman, and deputy Sheriff W. A. Bratton arrived at the scene shortly after the wreck. Both officers testified they investigated the wreck and inspected the terrain at the scene. They testified as to the location of the respective automobiles, the broken glass and scattered automobile parts. Mr. Patterson stated that in his almost five years of service as a patrolman he had investigated more than a hundred wrecks involving motor vehicles and had had special schooling with reference to accidents. The defendant's objection to this question to Mr. Patterson, on the ground that his answer would invade the jury's province, was overruled:

"Q. From your observation that night of the terrain and your observation the next morning, based upon your experience and schooling, where was the impact, in your opinion, of the motor vehicle?"

The witness answered: "A. In my best judgment, the right rear wheel of the Ford was approximately four feet from the edge of the pavement when the accident occurred."

Mr. Bratton testified as to the relative positions of the automobiles and stated the damage to the Ford started at the front door on the left side and became greater toward the rear, the largest amount of damage being at the rear seat.

This question was asked the witness: "Q. Did you observe what kind of damage it was?" The witness answered: "In my judgment the damage was from an impact." Defense counsel moved to exclude the answer, and the court overruled the motion.

Mr. Bratton testified he had been a deputy sheriff for several years and had investigated a number of automobile collisions. He said he saw broken glass, parts of radiator grill, door and other automobile parts near the Ford. He was then asked this question: "From your experience in investigating wrecks from impacts of automobiles, from what you saw there when you arrived five minutes after the wreck, in your judgment and opinion, where did that impact take place?"

After objection was overruled the witness answered: "A. On the shoulder of the highway off the pavement."

The witness Patterson also testified, "there was a kind of little hole knocked in the dirt there that looked like where a car just turned completely around, and," and, "there was prints of a tire track and a good little hole knocked out."

We find no error in the court's action in admitting the foregoing evidence, "Where a fact cannot be reproduced and made apparent to the jury, a witness may describe the fact according to the effect produced on his mind; or if, from the nature of a particular fact, better evidence is not attainable, the opinion of a witness derived from observation, is admissible." Mayberry v. State, 107 Ala. 64, 18 So. 219, 220; White v. State, 249 Ala. 501, 31 So.2d 335.

Moreover, a witness may give his conclusion as to the existence of certain facts derived from his personal observation, if the statement is nothing more than a shorthand rendering of a collective fact. Johnson v. State, 15 Ala.App. 194, 72 So. 766; Smitherman v. State, 34 Ala.App. 498, 42 So.2d 491, certiorari denied 252 Ala. 608, 42 So.2d 494; Holt v. State, 26 Ala.App. 223, 157 So. 449, certiorari denied 229 Ala. 368, 157 So. 452.

The following occurred during the direct examination of a State's witness:

"Q. Did you see her after the wreck had taken place?

"A. Yes, sir.

"Q. Was she conscious or unconscious?

"Mr. Upchurch: We object.

"Court: Overrule the objection.

"Mr. Upchurch: We except.

"A. Unconscious."

A witness may state that a person, whom he had an opportunity to observe, appeared to be conscious, Ledbetter v. State, 34 Ala.App. 35, 36 So.2d 564, certiorari denied 251 Ala. 129, 36 So.2d 571, or that "deceased appeared to him to be dead." Bowen v. State, 217 Ala. 574, 117 So. 204.

The court cannot be put in error in its rulings on evidence where no ground of objection is specified, unless the evidence is patently illegal and is incapable of being made legal by other evidence or by reframing the question. Smitherman v. State, supra. The evidence here was capable of being made legal by reframing the question.

It is strongly urged that the court erred in admitting certain record evidence relating to defendant's prior convictions. From a careful reading of the record, it is apparent that this excerpt from the Attorney General's brief deals adequately with this question:

"The appellant complains on page 13 of his brief that the Court allowed 'the Solicitor to introduce in evidence a typed statement, State's Exhibit No. 1, page 81–A of the transcript, which purported to be a record of previous convictions of Samuel Madison.' The argument in appellant's brief is that such evidence of previous convictions has no place in this trial and that the purported certificate was not properly authenticated. As it appears of record on page 81 such evidence was *not allowed* by the court. How the appellant can claim error in this, we are unable to understand."

The defendant's confessory statements to the officers were admitted in evidence only after proper predicate as to their voluntariness. The relevant and material portions of the confessions were properly admitted.

Defendant's timely objections, interposed to each of the following questions to officer Patterson, were overruled. The witness' answer to the questions are set out:

"Did you have a further conversation with him going to the hospital with reference to his driver's license?

"A. Yes, sir.

"Q. Relate that conversation with reference to the driver's license?

"A. I asked him if he ever had a driver's license, and he said he'd had it taken away from him."

The court also overruled defendant's motion "to exclude the reference to a separate and distinct offense."

"A. He said he had it taken away for driving while intoxicated."

Defendant's motion to exclude the above statement was overruled. The witness answered further: "And he stated he was in the process of trying to get them back."

We are of opinion there is merit in appellant's contention that the admission of evidence as to the revocation of his driver's license was reversible error.

In Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633, 636 the court said:

"By the weight of authority and the better reasoning as we see it, under the facts here presented, evidence that the driver was not licensed as required by statute is inadmissible unless there is some causal relationship between the injuries and the failure to have a license."

The Utah statute on involuntary manslaughter provides:

"Involuntary manslaughter is the unlawful killing of a human being without malice in the commission of (a) an unlawful act not amounting to a felony, or (b) in the commission of a lawful act which might produce death (1) in an unlawful manner or (2) without due caution and circumspection." State v. Lingman, 97 Utah 180, 91 P.2d 457, 465.

In the Lingman case the court held that subdivision (a) of the statute "refers to

some acts which are malum prohibitum, but not all such acts."

Of the Lingman case the court in State v. Peterson, 116 Utah 362, 210 P.2d 229, 230, said:

"We also stated therein that the 'unlawful act' must be 'reckless or in marked disregard for the safety of others.' The implication is that the nature of the unlawful act must be such that it has potentialities of injury to others. * * * In other words, the compliance with the law affects the manner of handling the machine. * * *

"Under the principle of the Lingman case, the driving without a license—or after it has been revoked—is an offense malum prohibitum that is not the foundation for an involuntary manslaughter charge. With or without a license, the manner of driving is not affected. We believe that appellant's point is well taken. The admission of such evidence invites punitive measures without regard to the elements of the offense charged."

Our courts hold:

"In order to constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence." Harrington v. State, 83 Ala. 9, 3 So. 425, 428.

"If one drives an automobile in such a manner as to evidence a wanton and reckless disregard of human life at the time and place and under the circumstances, and such driving proximately causes the death of another, the act would be manslaughter in the first degree whether the positive intention to kill is proven or not." Gurley v. State, 36 Ala.App. 606, 61 So.2d 137, 139, and cases cited; Turner v. State, 38 Ala. App. 73, 77 So.2d 503, certiorari denied 262 Ala. 704, 77 So.2d 506; Gilliam v.

State, 38 Ala.App. 420, 89 So.2d 584, certiorari denied 265 Ala. 695, 89 So. 2d 587.

These decisions clearly show that it is the manner of the operation of the automobile which determines the guilt of the driver.

In the absence of evidence tending to show some causal connection between the manner of driving proximately causing deceased's death and defendant's possession or lack of possession of a driver's license, we are of opinion objections to the questions quoted above were improperly overruled.

What we have said applies also to the overruling of objection to the question to witness Patterson, in rebuttal: "Q. And did he not tell you they had been revoked for driving while intoxicated?" The witness answered: "A. He did."

It is stated in brief by the State: "This court has never held, to our knowledge, that in a criminal prosecution for manslaughter resulting from the collision of the automobile driven by the defendant and the automobile of deceased that evidence of the fact the defendant was driving without a driver's license is inadmissible. In fact this court has impliedly held to the contrary. In the case of Hampton v. State, 36 Ala.App. 193, 53 So.2d 885, a case which is strikingly similar to the case at bar, this court sustained the introduction of evidence allowed by the trial court that the defendant was driving without a license."

The incident referred to in the Hampton case was the trial court's overruling of defendant's objection to this question asked Lieutenant Glass of the "Highway Patrol Division attached to the Driver's license unit:" "Q. State whether or not after your search and perusal of the records of the State Highway Patrol Department whether or not those records showed John G. Hampton did or did not have on the 8th day of March, 1949, a driver's license?" The witness answered: "A. He did not have a driver's license on that date, no."

We have reexamined the original record in the Hampton case. The record discloses that immediately following the above ruling a colloquy occurred between the court and counsel for the State and the defendant, in the jury's absence, as to the admissibility in evidence of the original records of the Department of Public Safety of this collision. At the end of the colloquy, and before the court had ruled, defense counsel announced that the defendant admitted he had no license and would so testify on the stand, and asked that the record show such admission. Thereafter, the defendant testified on his direct examination that he did not have a driver's license on March 8, 1949.

Since the defendant's admission of the fact rendered harmless any error in the prior admission of the patrolman's testimony, see 7 Ala.Dig., Criminal Law, ⇔1169(3) for numerous decisions, and since, of course, there was no insistence of error by defendant, we saw no reason for a discussion of this incident in our opinion.

In Head v. State, 35 Ala.App. 71, 44 So.2d 441, a charge of manslaughter in the first degree, we said that questions concerning revocation of defendant's driver's license and his previous conviction for driving while intoxicated were improper, but in view of the court's sustaining of objections to the questions and his instructions to the jury, no prejudicial error resulted.

We are further of the opinion objections to the questions to the officers regarding the defendant's statements were improperly overruled for this reason.

The general rule is that "In proving a confession, the prosecution may introduce parts of the conversation which show, or indicate, that the accused has committed other and separate offenses, where such admissions are inseparably connected with the confession of the crime charged. In such cases the whole confession is admissible in evidence and may go to the jury under directions that they shall disregard the parts of the confession which do not relate to the crime in issue. But when the parts of a conversation connected with a confession of the crime charged can be separated from those relating to other offenses, only those parts which are material to the crime charged should be received in evidence." 20 Am.Jur. Evidence, Sec. 489, p. 426.

 The parts of the conversation relating to other offenses were separable from those relating to the crime in issue, and their only purpose was the proving of prior offenses. Such evidence is inadmissible unless it falls within the exceptions to the general rule. These exceptions are set out in McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528. None of such exceptions are applicable here.

For the errors pointed out the judgment is reversed and the cause remanded.

Reversed and remanded.