123 So.2d 179

**James Edward WHITE**

v.

**STATE.**

**6 Div. 663.**

Court of Appeals of Alabama.

March 15, 1960.

Rehearing Denied Aug. 16, 1960.

A. K. Callahan and Geo. W. Nichols, Jr., Tuscaloosa, for appellant.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

voluntary manslaughter. He was sentenced to two years imprisonment for killing Alton N. Beasley in an automobile collision.

White filed a motion for new trial, assigning forty-one grounds. The motion was overruled.

The prosecution's version of Beasley's death runs:

Alongside State Highway 69 south of Tuscaloosa, there is a gasoline filling station. Mr. R. A. Barks ran an adjoining cafe.

August 23, 1958, about nine o'clock at night, Mr. Barks saw White driving an automobile in a private drive, first at about five to ten miles an hour. As White neared the road, Barks judged he was going about thirty-five miles per hour. Then he heard White's Ford collide with a Mercury station wagon in which Beasley was riding.

One State witness estimated White's speed at thirty-five miles per hour, and another described it as "high speed."

The cars collided in a forty-mile speed zone. There were some stores on the roadside.

A number of photographs were introduced in evidence and some of the witnesses illustrated their testimony by referring to them. One State witness was asked to "point out up there * * * just where you saw that car. * * * You can use that pointer."

■ The omission of photographs and blackboard drawings from the appellate record precludes our review as to the sufficiency of the evidence. Hicks v. State, 21 Ala.App. 335, 108 So. 612; Arrick v. Fanning, 35 Ala.App. 409, 47 So.2d 708; Gilliam v. State, 38 Ala.App. 420, 89 So.2d 584; Graham v. State, 40 Ala.App. 471, 115 So.2d 289; Jones, Alabama Jury Instructions, § 759.

CATES, Judge.

White takes this appeal from his conviction in the Tuscaloosa Circuit Court of

White's first contention is that the solicitor, by conduct and questions, created an atmosphere of ineradicable prejudice: (1)

by various references, both by question and argument, in which the solicitor is said to have portrayed White as a "hot rodder" and a "constant wrecker of automobiles," and (2) by three times attempting to question White as to his having had a driver's license.

On examination of one of the State's witnesses, the solicitor asked, over objection, whether the witness saw a sticker (not further shown as a gummed label or decalcomania), being removed from White's car immediately after the collision. The witness was also asked if the thing taken was "one of those drag signs." The witness did not know.

The solicitor, in cross examining a defense witness as to White's car, was allowed to ask, over objection, the following question:

"Q. Do you know whether it has these things on the—what do they call them—these hot rod things on the sides?"

The witness did not understand the question, and after some verbal sparring it was brought out that White's car did not have twin mufflers or pipes that run around outside of it.

■ In view of the negative answers, we are unwilling to consider that any of these claimed prejudicial questions were erroneous, either singly or joined together. While we should not confuse the capacity of an automobile for speed with the mental attitude of the driver, we are unwilling on this record to say that references to a "drag sign," twin mufflers, pipes running around the sides or "hot rod things" are per se prejudicial. Marler v. Pinkston, Mo., 293 S.W.2d 385.

Aside from those matters which partake of "preexisting" prejudice, such as reference to a defendant's race, or some irrelevant description which by common acceptation has, from time to time, been considered prejudicial per se (e. g., "honky tonk," Nix

v. State, 32 Ala.App. 136, 22 So.2d 449), the effect on a jury of questions, particularly those never answered, and of argument by counsel has been difficult for appellate courts to assess.

■ Certainly, the State has as much right as the defendant to argue to the jury every matter of legitimate inference from the evidence, and as stated in People v. Mull, 167 N.Y. 247, 60 N.E. 629, 631, "the evidence may be examined, collated, sifted, and treated in [the solicitor's] own way." (Bracketed matter substituted.)

In Moreland's Modern Criminal Procedure, p. 266, we find:

"* * * But anything less than an appeal to a pre-existing prejudice is not apt to be ground for a reversal, so long as it comes within reasonable bounds of the evidence. So, emotional appeals, even though dramatically uttered are not ordinarily ground for a reversal, although occasionally an excessive appeal to sympathy or to fear will be held to go beyond the limits of reasonableness to be expected in a fair trial. * * *"

Thus, in Powell v. State, 39 Ala.App. 246, 100 So.2d 38, after pointing out that appellant, under Code 1940, T. 15, § 389, and Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, has the onus of persuasion of both error and injury, we relied on (1) the trial judge's opportunity to observe and (2) rhetorical questions partaking of the nature of argument. We held such questions harmless if, like argument, their substance was taken from matters already in evidence.

■ The indentification of the automobile which White drove, by virtue of the indictment, was an issue in the case. Accordingly, its description was permissible enquiry. Ott v. State, 160 Ala. 29, 49 So. 810 (description of well admissible because scene of crime); Dukes v. State, 210 Ala. 442, 98 So. 368 (description of derringer).

■ The second element of claimed prejudice by the solicitor arises from the driver's license question, objection to which in its several forms was sustained three times. In Head v. State, 35 Ala.App. 71, 44 So.2d 441, 447, this court, per Harwood, J., said:

"During the cross-examination of appellant he was asked by the Solicitor how many times he had had his driving license taken away. The court sustained the objection interposed to this question.

"He was then asked if he had not been convicted of driving while intoxicated. The court sustained the objection to this question. *Defense counsel then moved for a mistrial.* The court denied this motion, and instructed the jury as follows: 'Gentlemen, there is no testimony to that effect before you. For all you know he would have said no. That is what you are to presume.'

"Both questions were of course improper. However, in view of the abundant tendencies of the evidence showing appellant's guilt, and the effort of the judge to eradicate the prejudicial effect of the questions, we are unwilling to say that the appellant's rights were probably injuriously affected by the Court's action in denying the motion for a mistrial. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix." (Italics supplied.)

Here White's counsel made no motion for a mistrial, so that the collected effect, if any, of merely posing the questions was never argued to the trial judge. Since objection was sustained, Madison v. State, 40 Ala.App. 62, 109 So.2d 749, does not apply.

■ White's second claim of error proceeds from the solicitor's cross-examination of a character witness as to whether or not she had ever heard that White had been driving a car for two years without a driver's license. The answer was no. Other character witnesses were asked similar questions.

It is argued that Kelly v. State, 17 Ala. App. 577, 88 So. 180, 181, holds that it is prejudicial to impute guilt to a defendant by asking a witness as to his having heard the defendant was guilty of a certain crime. The Kelly case has this to say:

"When these questions are asked, in good faith, they are permissible, to test the witness as to what he considers good character. Nothing appearing to show to the court that the questions were not asked in good faith, the court properly overruled the defendant's objections. In each case the witness answered that he had not, until the day of the trial, around the courthouse, heard of the incidents inquired about and embraced in the questions propounded by counsel for the state. * * *"

In the Kelly case, the lower court was reversed because of an apparent limitation on the defendant of the scope of argument and the failure of the judge to instruct the jury as to the purpose of permitting such cross-examination, i. e., to test credibility and to plumb the depth of character witness's knowledge of Kelly's repute.

There is no claim here that the solicitor asked these questions in bad faith. Such questions are not error and alternatively the negative answer of the witness removes the possibility of injury. Jackson v. State, 38 Ala.App. 522, 93 So.2d 804.

■ White's third proposition is based upon the solicitor's question asked in cross examining White, "During the past two years how many cars have you wrecked?" Without going into whether this question was properly objected to or was erroneous, we see no substantial injury since defendant gave a negative answer.

■ During final argument, White's counsel argued, "Gentlemen, if you cannot say that he intentionally killed him, then you

cannot convict him under the law." The solicitor objected and the trial judge agreed saying, "That was not the law." Mr. Callahan, counsel for White, then pointed out that the indictment read "unlawfully and intentionally." The trial judge proceeded to instruct the jury concerning the word "intentional."[1] Thereupon Mr. Callahan reserved an exception "to Your Honor's oral charge at this time." Argument was then continued.

The indictment carried the lesser included offense of second degree manslaughter, a case of which can be supported by evidence of negligence. See also Rainey v. State, 245 Ala. 458, 17 So.2d 687, and Smith v. State, 40 Ala.App. 158, 109 So.2d 853, as to intent and wantonness in manslaughter.

Davis v. State, 213 Ala. 541, 105 So. 677, 678, gives the Alabama rule concerning the use of legal texts in jury argument:

> " * * * The law of the case must be taken by the jury from the trial judge. It is the right of counsel *under the guidance of the court,* to discuss the rules of law applicable to the different phases of the testimony. In so doing it is the approved practice to permit the reading of correct statements of the law from text-books and decisions. The court has a general discretion in such matters, to be revised only when abused. *Generally, the reading of the facts of other cases, or of the case at bar on a former trial, should not be permitted.* It tends to distract the attention of the jury from the facts in hand, and to invite the drawing of analogies—no part of the jury's function. * * *" (Italics supplied.)

See Annotation 67 A.L.R.2d 245.

Since counsel run the risk of being "guided" by the court when making statements to a jury as to what may be the applicable principles of law, submitting and having approved written charges before argument avoids the danger of the judge cutting the ground from under an argument. Inasmuch as the right to be heard must be harmonized with the principle that the trial judge instructs as to the law of the case, we see here neither error nor injury. Parham v. State, 217 Ala. 398, 116 So. 418.

Written charge 44 requested by White might well have been given; it reads:

> "The court charges the jury that a reasonable doubt may arise, though there is no probability of the defendant's innocence in the testimony; and, if the jury have not an abiding conviction to a moral certainty of his guilt, then they should find him not guilty."

From the trial judge's point of view, this charge is not happily worded in that, on first blush, it appears clearly erroneous. Cf. Whittle v. State, 213 Ala. 301, 104 So. 668. However, it expresses the concept that acquittal can result from the lack of evidence or from the lack of credible testimony. See Odom v. State, 253 Ala. 571, 46 So.2d 1.

■ In this particular instance, the trial judge in his oral charge stated as follows:

> "Now, to this indictment the defendant pleads not guilty, and that puts the burden on the State, as in all criminal cases, to satisfy the jury from the evidence beyond a reasonable doubt that

---

1. We excerpt in part:
    " * * * It is not the intention to kill, but the intention to do something, whatever he did do, and if that, in the mind of a reasonably prudent man, if he knows it was so reckless that it would most likely do serious injury or cause death to someone, then that is the intention

"Mr. Callahan: Such conduct as to amount to an intention.
"The Court: Well, it is the intention to do whatever he did. If that was reckless enough that a reasonably prudent man would know it would cause death, that is the thing. It is not the intention to kill. * * *"

the defendant is guilty of one or the other of these charges. If the State does not meet that burden of proof then the defendant could not be convicted of any crime. The state is required to prove also to your satisfaction from the evidence beyond a reasonable doubt that the defendant is guilty of one or the other of these charges. Every defendant is presumed to be innocent until his conviction is proven by the evidence—I mean until the crime he is charged with is proved by the evidence beyond a reasonable doubt and to a moral certainty."

And he also gave the jury, in writing, the following charges requested by the defendant:

"12. The court charges the jury that, if the jury, upon considering all the evidence, have a reasonable doubt about the defendant's guilt, arising out of any part of the evidence, they should find him not guilty.

"13. The court charges the jury that if there is one single fact proved to the satisfaction of the jury which is inconsistent with the defendant's guilt, this is sufficient to raise a reasonable doubt, and the jury should acquit him.

"16. Throughout the trial the defendant is presumed to be innocent. This presumption of innocence accompanies defendant throughout the trial and until the evidence against him is so strong and convincing that every member of the Jury is convinced to a moral certainty and beyond all reasonable doubt that he is guilty as charged. Unless the evidence is this strong against defendant, he should not be convicted.

"30. The court charges the jury that if after considering all the evidence in the case, that tending to show guilt, together with that tendency to show innocence, there should spring up involuntarily in the minds of the jury

from any part of evidence, a probability of the innocence of the defendant, the jury must acquit.

"37. The court charges the jury that the defendant enters into this trial with a presumption of innocence, and this is a fact in the case, which must be considered with all the evidence, and should not be disregarded.

"42. The court charges the jury that if there is, from the evidence, a reasonable probability of defendant's innocence, the jury should acquit the defendant."

We have reviewed the exceptions to the oral charge, and what has been heretofore stated with regard to "intention" covers the matter there excepted to by White's counsel.

As to the other charges which were refused White, they were covered by given charges, or by the oral charge, or stated erroneous propositions of law, or consisted of abstractions, or were misleading, or in some instances would have predicated an acquittal upon deceased's contributory negligence. See Hanby v. State, 39 Ala. App. 392, 101 So.2d 553.

Inasmuch as White has not argued these refused charges otherwise than in bulk, we have omitted a detailed analysis of our review of them.

We have considered the entire record under the mandate of Code 1940, T. 15, § 389, and consider that the judgment below is due to be

Affirmed.

### On Rehearing.

Two main points in support of White's application are (1) that the solicitor, in cross examining White's character witnesses, asked questions designed to impute to him guilt of offenses otherwise inadmissible; and (2) that the solicitor's cross-examination as to character was not confined in time to the period before the commission of the offense charged.

 Cross-examination is permissible to explore a witness's knowledge of the subject for which the other party has produced him. And the State comes within the Code section, T. 7, § 443; Endsley v. State, 26 Ala.App. 605, 164 So. 396.

 That this process permits the State to ask character witnesses questions which, if fabricated or merely rhetorical, would be accusations (whether feigned or true) of other offenses, is one of the balanced choices which the law must often make. The control—which involves good faith and legal ethics—must (except as we mentioned in the foregoing part of this opinion) be left largely to the trial judge's discretion. We see no abuse of discretion here.

The rules as to impeachment of evidence as to the defendant's reputation generally are set forth in Thomas v. State, Ala.App., 122 So.2d 731,[1] rehearing denied May 24, 1960. But the rule of limiting testimony of repute to the date of the offense is not brought into play because the trial judge did not have put to him a request thereon.

 The solicitor asked two defense character witnesses whether or not the witness had heard White had driven a car two years without a driver's license. The failure to limit the time to before August 23, 1958, made the question objectionable. See Thomas v. State, supra. However, the defense objected on the specific ground that the question sought to bring in commission of another unrelated offense. The specification of one ground for an objection waives all others. Pope v. State, 39 Ala.App. 42, 96 So.2d 441.

 As to the refusal of charge 44, we consider the effect of the quoted part of the oral charge and of charges 12, 13, 16, 30, 37 and 42 (quoted above) was an adequate expression. Charge 30 in particular conveys virtually the same thought.

There was no error in the refusal of charge 46:

"The court charges the jury that defendant cannot be convicted in this case unless each and every juror is not only reasonably satisfied from the evidence of defendant's guilt, but is satisfied from the evidence and the evidence alone, beyond all reasonable doubt, and to a moral certainty, of his guilt."

Code 1940, T. 7, § 273, says in part: "The refusal of a [correct] charge, * * * shall not be cause for a reversal * * * if * * * the same rule of law was substantially and fairly given * * * in charges given at the request of parties." (Italics supplied.)

White's charge 16 which the judge read to the jury pointed out that the presumption of innocence requires proof convincing "every member of the Jury" to a moral certainty, etc. The giving of charge 16 was sufficient notice, fair and substantial in meaning, to direct that all of the jury must join in the verdict.

Application overruled.