109 So.2d 853

**William Luke SMITH**

v.

**STATE.**

**1 Div: 777.**

Court of Appeals of Alabama.

Feb. 24, 1959.

Stanford Young, Waynesboro, Miss., and Harry Seale, Mobile, for appellant.

John Patterson, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

Under an indictment charging murder in the first degree this appellant was, by the jury, found guilty of manslaughter in the first degree. Judgment was entered accordingly, punishment being fixed at imprisonment in the penitentiary for a term of five years.

Since this judgment must be reversed because of error in the court's oral instructions to the jury, to which exceptions were duly reserved, we will set out only a thumb nail sketch of the tendencies of the evidence offered below.

The evidence is undisputed that preceding the killing the appellant and deceased had engaged in playing shuffle board in the Sunset Inn in Mobile County. They had wagered on each game, and a heated argument arose between them in the course of the final game. Threats were made, but by which participant is somewhat in dispute.

At any rate, the appellant went to his truck parked on the outside, and, according to appellant, decided to return to the tavern for another beer. However, he conveniently obtained a pistol from his truck before his return.

It should also be noted that the deceased armed himself with a beer bottle, and stationed himself just inside of, and to the left of the doorway, the door swinging to the left upon being opened.

Taking the evidence in its most favorable light to the appellant, for the purposes of this review, the deceased struck the appellant a rather severe blow on the mouth with the beer bottle just as he reentered the tavern.

The two then clenched, and fell to the floor.

According to the State's evidence the appellant pulled his pistol and shot the deceased. According to the appellant, as he and deceased struggled his pistol fell out of his pocket onto the floor. A Mr. Dickinson, a patron at the bar, grabbed the pistol, and appellant also grabbed it, catching it by the barrel. Both sought possession of the pistol, and in the struggle the gun fired two or three times.

In his oral instructions to the jury the court defined manslaughter in the first degree as follows:

"Then a third degree of homicide would be manslaughter in the first degree. Gentlemen, manslaughter in the first degree is the voluntary taking of human life and provides that the killing or means whereby death was brought about must be intentionally done or made but not with the intent to kill."

The record shows that about an hour and a half after it had retired, the jury returned to the court requesting further instructions as to possible verdicts.

One juror stated: "We are confused. Such as manslaughter, what does manslaughter consist of?"

In reply to this inquiry the court repeated its definition above set out, and in response to a further question by a juror, in which the juror stated: "There is a difference in the definitions," the court again twice repeated the definition of manslaughter in the first degree as he had first stated it.

Counsel for appellant then reserved an exception to this portion of the court's instruction, stating:

"We wish to reserve an exception to the Court's definition of manslaughter in the first degree. Could read it back but in substance that it must be, or may be without the intention to kill. Manslaughter in the first degree could be with the intent to kill in certain instances like passion suddenly aroused and the intent to kill may exist."

The court met this exception by again repeating the definition of manslaughter in the first degree as first stated above.

The court's definition that "manslaughter in the first degree is the voluntary taking of human life and provides that the killing or means whereby death was brought about must be intentionally done or made but not with intention to kill," is an anomaly, and completely self contradictory.

"Voluntary" means done by design, or intention; intentional; purposed, or intended. See Webster's Int. Dic., 2nd Ed.

One cannot voluntarily take a human life, or kill intentionally, "but not with intention to kill."

■ In order to constitute manslaughter in the first degree, there must be either a positive intent to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily harm may be a consequence.

The last above definition of manslaughter in the first degree has been set forth in decisions of our Supreme Court, and of this court, in innumerable cases. We will not cite them, for they may be found in Nixon v. State, 268 Ala. 101, 105 So.2d 349.

■ As above stated, manslaughter may result when there is a positive intent to kill. The lower court's instructions were therefore erroneous in this aspect.

■ Where passion is suddenly and reasonably aroused by a blow, as in this case, inflicted on the accused at the time of, or immediately preceding the killing, the homicide is manslaughter in the first degree. Ex parte Warrick, 73 Ala. 57; Stewart v. State, 78 Ala. 436; Williams v. State, 161 Ala. 52, 50 So. 59; Caldwell v. State, 203 Ala. 412, 84 So. 272; Easley v. State, 246 Ala. 359, 20 So.2d 519.

That part of the definition of manslaughter in the first degree to the effect that it may arise from an act of violence from which, in the usual course of events, death may be a consequence, does not mean that an intent to kill must not be present.

■ Without an intent to kill there can be no murder, or manslaughter in the first degree. Barnett v. State, 27 Ala.App. 277, 171 So. 293. It is not required that there be a positive or specific intent to kill to constitute manslaughter in the first degree. Thayer v. State, 138 Ala. 39, 35 So. 406; Jones v. State, 21 Ala.App. 234, 109 So. 189; Rector v. State, 11 Ala.App. 333, 66 So. 857; Langham v. State, 12 Ala.App. 46, 68 So. 504. This for the reason that where an accused's conduct or act of violence which ordinarily in the usual course of events would result in death or great bodily harm to another, and a death does result, the accused must be deemed to intend the probable results of such act, i. e., that he intended to kill. Lewis v. State, 96 Ala. 6, 11 So. 259; Fowler v. State, 161 Ala. 1, 49 So. 788; Jones v. State, 13 Ala. App. 10, 68 So. 690; Thomas v. State, 31 Ala.App. 1, 9 So.2d 150; Clayton v. State, 36 Ala.App. 175, 54 So.2d 719.

The lower court's instruction as to what constituted manslaughter in the first degree was therefore completely erroneous in this second aspect.

Several other points are urged and argued in appellant's brief as constituting error. They are not likely to arise in another trial of this case. We therefore will refrain from a discussion of them, other than to note that the court refused a number of appellant's requested charges. Some of these refused charges have been approved in numerous decisions of our Supreme Court, and of this court, and their refusal held to be error, unless covered by other instructions. The instructions, both the court's charge, and the requested charges given, were rather limited in scope in this case. Several of these refused charges could well have been given by the court below rather than run the risk of having error determined upon the uncertain possibility of their being covered by the given instructions.

Reversed and remanded.