122 So.2d 520

James Harold GREEN

v.

STATE of Alabama.

1 Div. 783.

Supreme Court of Alabama.

Aug. 18, 1960.

Harry Seale, Mobile, for appellant.

John Patterson, Atty. Gen., and Robt. C. Dillon, Asst. Atty. Gen., for the State.

LIVINGSTON, Chief Justice.

Appellant, James Harold Green, was indicted by the Grand Jury of Mobile County, Alabama, on March 13, 1958, for murder in the first degree. Upon such indictment, appellant was tried by a jury and convicted of murder in the second degree, with punishment fixed at imprisonment for twenty-five years. From such conviction, appellant presents this appeal.

In January 1958, the defendant was residing temporarily on Main Street in Prichard, as his dwelling house on Griffin Street had been partly destroyed by fire. He had hired a carpenter to repair the house and had bought certain building materials from deceased.

According to the testimony of the defendant, on the morning of the shooting the defendant left his temporary home on Main Street and went to his residence on Griffin Street. When he got there, his wife and a woman named Mary Wells were on the outside, as was the truck of deceased; defendant put some bedclothing in his arms and put his pistol on top of the bedclothing and went on into the building where the deceased was. He laid the bedclothing and the pistol down on a studio couch in the living room beside the door that goes into the bedroom. He had already moved some furniture into the house as part of it had already been repaired.

The defendant's house had no front porch and the front door entered into the living room. Griffin Street ran northwardly and southwardly and the living room was on the north side of the front. Immediately south of the living room was the bedroom and a door led from the living room into the bedroom near the front door. The kitchen was immediately east or back of the bedroom and the dining room was immediately back of the living room. There were four rooms in the house.

The deceased, Ezra McGee, was in the bedroom at the time the defendant entered the house, and they got into a dispute as to the amount of lumber that had been delivered by McGee and as to how much, if anything, the defendant should pay to him. During the course of the argument, according to appellant's version of the affair, McGee reached down and grabbed a crowbar, or wrecking bar, while the defendant was standing in the door between the living room and the bedroom. At that time,

McGee was in the bedroom. When McGee advanced on the defendant with the crowbar drawn back the defendant stepped back into the living room, grabbed the pistol off the bedding material on the studio couch, and shot McGee twice; McGee ran out the back door, but the defendant never did move out of the living room; defendant then left and went to a neighbor's house, then to his aunt's house, and later flagged a police car down and gave himself up.

Defendant stated that he had not been drinking at all that morning and had had nothing to drink the night before.

Witness Mary Wells testified that she was standing in front of appellant's house at the time of the difficulty and heard the argument between defendant and deceased; that she saw appellant shoot deceased two times, and that deceased had nothing in his hands at the time of the shooting. She further testified that defendant did not appear to be drunk that morning and that if she had ever seen him drunk she didn't know it.

Dr. E. L. Brown, pathologist and assistant coroner, stated that there were two gunshot wounds in the body of McGee; one being in the left arm, with very little damage, and the other one being in the left side of the chest; that there were powder burns on the coat of deceased, and that powder burns from a pistol will ordinarily be noticed at close range, anywhere from a foot, one or two feet; that the small neat holes were such as you see with a rifle cartridge or pistol cartridge, and that the bullets went in from the front. The doctor's testimony also indicated that the arm could have been raised when the shot was fired, as it entered at a lower spot than it left the arm. On the other hand, Mary Wells testified that the parties were facing each other when the first shot was fired and that the next two shots were fired when McGee was running. The doctor further testified that death was caused by loss of blood from a gunshot wound in the heart.

Witness Lennie Miller testified that he lived in a house behind appellant; that he knew appellant and deceased; that he was standing on the south side of his house on the morning of the killing and that he could clearly see the back of appellant's house from where he stood; that he heard two shots, and he looked toward appellant's house and saw deceased running from appellant's house; that appellant came to the back door of his house and shot deceased with a pistol; that deceased was going over a fence behind appellant's house at the time appellant shot deceased, and that deceased staggered to a spot about ten feet from him (Miller) and fell at that spot and died.

A police officer and two detectives, who investigated the shooting, testified that appellant flagged down a police car and surrendered approximately thirty minutes after the killing; that appellant stated he was the man they were looking for, and that from appellant's uncertain speech, the smell of his breath, and his actions, appellant appeared to be under the influence of alcohol. The officers further testified that appellant first stated that he had left the death weapon at the scene of the killing but later admitted that he had hidden it at an aunt's house, where the weapon was subsequently found; that appellant told the officers that he had shot deceased when deceased attacked him with a crowbar or wrecking bar; but upon searching appellant's house and grounds no such tool could be found.

There is a contention by appellant that it was error for the trial court to refuse to give to the jury a requested written charge reading as follows:

"2. The Court charges the jury that, if they are reasonably satisfied from the evidence in this case that the deceased had threatened to take the life of the defendant, and such threats had been communicated to defendant before or at the time of the fatal shooting, then this defendant, on the occasion of this killing, would have been authorized and justified in taking more prompt and decisive means of defense than if such

threats had never been made and communicated."

The charge is abstract, and therefore properly refused. There was no evidence that any threat was made against the appellant. Higginbotham v. State, 262 Ala. 236, 78 So.2d 637; Parvin v. State, 248 Ala. 74, 26 So.2d 573.

■ The appellant contends the trial court erred in admitting testimony that thirty minutes after the shooting the defendant appeared to be intoxicated or was drinking. This evidence was adduced in the following manner during the direct examination of Police Patrolman J. E. Baxter by the Assistant State Solicitor:

"Q. Now did you have occasion to see Green? (Referring to defendant) A. Yes sir.

"Q. About what time did you see him? A. Approximately thirty minutes after we—

"Q. Thirty minutes after. Did you have occasion to smell his breath? A. Yes sir.

"Q. Did he have any odor on his breath? A. Yes sir.

"Q. What was that odor? A. Alcohol.

"Q. All right, did you have occasion to talk with him? A. Yes sir.

"Q. How was his speech?

"Mr. Seale: We object and we move to exclude this statement. In DWI cases the Supreme Court has held specifically with respect to thirty minutes, thirty minutes afterwards he can't introduce any proof as to alcohol, with respect to a man being charged with driving while drunk. We move to exclude the statement he had alcohol on his breath because of the fact that it is too remote.

"The Court: Overruled.

"Mr. Seale: Except."

This insistence by appellant for reversal fails on two grounds: First, it appears from the transcript that appellant was too late in making his objection and motion. However, even if objection and motion had been timely made, said testimony was admissible. This testimony by the patrolman was in conjunction with testimony to the effect that approximately one-half hour after the killing, appellant "flagged down" a police car and told the officers that he was the man they were looking for. During the time defendant was with these officers, he made other statements which were inculpatory statements. It is proper for the state to show the circumstances under which such inculpatory statements were made. Reeves v. State, 260 Ala. 66, 68 So.2d 14; Smarr v. State, 260 Ala. 30, 68 So.2d 6; Peters v. State, 240 Ala. 531, 200 So. 404; Rountree v. State, 20 Ala.App. 225, 101 So. 325; Campbell v. State, 23 Ala. 44; Maddox v. State, 159 Ala. 53, 48 So.2d 689.

■ Appellant further contends that under the evidence in the instant case it was error for the court to refuse a requested written charge as follows:

"3. The court charges the jury that a killing in sudden passion, excited by sufficient provocation without malice, is manslaughter, not because the law supposes that this passion made the slayer unconscious of what he was about to do, but because it presumes that passion disturbed the sway of reason and made him regardless of her admonition."

After a careful review of the evidence of this case, we are clear to the conclusion that defendant is either guilty of murder, or acted in self-defense and is not guilty of any offense. Even though the indictment impliedly includes manslaughter, it is not necessary to charge on the law of manslaughter if the evidence is such that defendant is guilty either of murder, or acted in self-defense and is not guilty of any offense. Kelly v. State, 235 Ala. 5, 176 So. 807; Whitehead v. State, 206 Ala. 288, 90

**110**

So. 351; Gafford v. State, 125 Ala. 1, 28 So. 406; Booth v. State, 247 Ala. 600, 25 So.2d 427.

A careful review of the record shows no error committed by the trial court and the verdict is accordingly affirmed.

Affirmed.

LAWSON, STAKELY and MERRILL, JJ., concur.