The Grand Jury of Montgomery County charged the appellant, William Baldwin, with first degree murder of John Jackson, by shooting him with a shotgun. Appellant entered pleas of not guilty, and not guilty by reason of insanity. A jury found the appellant guilty of murder in the second degree and fixed his punishment at forty years imprisonment in the penitentiary. The trial court entered judgment in accordance with the verdict, and appellant appeals to this Court.
This appeal was submitted to this Court on briefs. The appellant was represented by counsel of his choice at all proceedings in the trial court and is represented in this Court by different counsel under court appointment.
The appellant argues in his brief four grounds why his conviction should be reversed; first, because the trial court allowed in evidence State's exhibit 3, a pump shotgun and State's exhibit number 4, two spent shotgun shells, and prejudicial testimony about them; second, because the trial court sustained State's objection to a question to appellant's mother calling for hearsay evidence; third, by allowing into evidence a written statement of appellant when there was not sufficient proof of a valid waiver by him of his rights against self-incrimination; fourth, the refusal of the trial court to charge the jury on second degree manslaughter. We will consider the matters treated in appellant's brief in the order therein set out.
State's evidence tends to prove that between 9:00 and 11:00 o'clock, P.M. on a night in the middle of March, 1975 the appellant came around the corner of the house at Bea's Place, in Macedonia Community *Page 1158 
in Montgomery County with a single barrel sawed off shotgun and shot the deceased in his chest when he was sitting on the front seat of his car which was backing out from in front of Bea's Place; that there was a hole blasted out of the windshield in front of where the deceased was seated; that deceased drove off down the road a short distance where his car went off the road and wrecked; deceased was removed from his wrecked car and laid out on the ground; that after deceased was laid out on the ground beside his car the appellant secured a 12 gauge pump shotgun and went across the road and shot two times down toward the wrecked car where deceased was laid out on the ground; that deceased's death was caused by wounds made by the single barrel sawed-off shotgun; that State's exhibit 1 is the single barrel shotgun first used by appellant; that State's exhibit 3, a twelve gauge pump shotgun, is the second gun used by the appellant when he fired down toward the car of the deceased where the deceased had been laid out; that State's exhibit 4 is two twelve gauge expended shotgun shells; that State's exhibits 3 and 4 were secured by officers at the scene of the shooting on the night of the shooting; that the two twelve gauge expended shotgun shells were fired from State's exhibit 3. The appellant claimed self-defense.
The appellant argues that the State's exhibits 3 and 4 had no bearing on the issues presented by the indictment against him; that there was no proof that any of the shots fired from the pump gun contributed in any way to the death of the deceased; that the introduction into evidence of State's exhibits 3 and 4 was highly prejudicial and had no other purpose than to prejudice the appellant.
Intent to kill being a necessary element of murder in the second degree the burden is on the State to prove it. Smith v.State, 40 Ala. App. 158, 109 So.2d 853, and cases therein cited. The test as to the admission of evidence is stated in Rollingsv. State, 160 Ala. 82, 49 So. 329, and again by Justice Merrill in the case of Nichols v. State, 267 Ala. 217, 100 So.2d 750. The test is that the evidence, "must have some tendency to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered. It must have some tendency to shed light upon some material inquiry." We hold that under the facts shown by the record in this case State's exhibits 3 and 4 and the evidence that the spent shells were fired in State's exhibit 3 is admissible evidence for the jury to consider on the material issue of intent of appellant. Nichols v. State, supra; Rollingsv. State, supra.
The second contention of the appellant occurred during the direct examination of appellant's mother who owned and operated Bea's Place. We quote from the record,
 "Q Okay. Do you know a girl by the name of Shirley Givens?
A Yes, I know Shirley Givens.
 Q Did you have a conversation with her in and around the time of this shooting and right around the time all of this happened?
A Right around the time I did.
 Q Did the conversation you had with her include a conversation she had just had at the scene with Jim Green?
A Yes.
 Q I will ask you to relate to this Court what Sirley Givens told you?
MR. ESPY: Your Honor, we object to that.
THE COURT: Sustained.
 Q Was this there right at the scene after it happened?
A That is right.
 MR. COLLIER: Your Honor, it is part of the res gestae.
THE COURT: No.
 MR. ESPY: If you can produce that witness. You know better than that, Wayne.
THE COURT: All right.
Q Henrietta, where is Shirley Givens?
A She is in Ohio. She is not here. *Page 1159 
Q She is out of the state?
A RIGHT.
 MR. COLLIER: Your Honor, the witness is not available.
 THE COURT: It still would be hearsay testimony not subject to cross examination. The Court would rule that she can't report any conversation she had with anybody else.
MR. COLLIER: That is all. Your witness."
Appellant contends the conversation that the witness, Henrietta, had with Shirley Givens about a conversation Shirley Givens had with Jim Green was a part of the res gestae and exempt from the hearsay rule, and the action of the trial court in sustaining State's objection was highly prejudicial to him. Res gestae is difficult to define. It is a question for the court to decide under the particular facts in each case.
It is clear from the record in this case that appellant was offering his mother as a witness to recount an alleged conversation that Shirley Givens, who was not a witness, had with Jim Green, who was a witness. This conversation was after the shooting. We hold that a statement which is merely a narration of a past transaction is not a part of the res gestae, and that the trial court was correct in it's ruling.Illinois Central R.R. Co. v. Lowery, 184 Ala. 443, 63 So. 952;Dean v. State, 105 Ala. 21, 17 So. 28; Reese v. State,338 So.2d 495; Kiel v. State, 28 Ala. App. 308, 184 So. 208; AlabamaPower Co. v. Ray, 249 Ala. 568, 32 So.2d 219; Harrison v.Baker, 260 Ala. 488, 71 So.2d 284.
We will now consider appellant's waiver of his rights against self-incrimination. Officer Bob Singleton, a deputy sheriff of Montgomery County, testified in substance that he was the chief investigator of the shooting and death of the deceased. He took custody of the appellant on the night of and at the scene of the shooting and lodged him in the county jail. About forty-five minutes later, Officer Singleton told the appellant he could make a telephone call if he wanted to. The appellant was in custody from about 1:15 until around 5:00 that morning when he was questioned by Officer Singleton. About ten minutes before questioning the appellant about the shooting, Officer Singleton informed the appellant of his constitutional rights as set out in State's exhibit 8 by reading it aloud to him. Officer Singleton testified that exhibit 8 is in writing and is commonly called a "Waiver of Rights." After reading State's exhibit 8 to the appellant, he said he understood it and voluntarily signed it in the presence of Officer Byron and Officer Singleton.
State's exhibit 8 recites in substance, "Before we ask you any questions you must understand your rights. You have the right to remain silent. Anything you say can be and will be used against you in Court. You have the right to have a lawyer present to advise you before we ask you any questions, and to have him present with you during the entire time you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you if you wish without any cost to you. You have the right to have him present to advise you before we ask you any questions, and also during the entire time you are being questioned.
"If you wish to answer questions now without a lawyer present, you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."
There was a long hearing by the trial court out of the presence of the jury, and the trial court determined that the appellant knowingly, freely and voluntarily waived his rights and freely signed State's exhibit 8. The appellant did not testify at the hearing out of the presence of the jury or at his trial and offered no evidence with *Page 1160 
reference to his waiver of his rights. The State laid the proper predicate for the introduction of the appellant's inculpatory statement. We have reviewed all the evidence and hold that under the facts shown in this record the trial court was correct in holding that the appellant knowingly, intelligently and voluntarily waived his rights and freely signed State's exhibit 8. Wright v. State, Ala., 340 So.2d 74;Dotson v. State, 288 Ala. 727, 265 So.2d 162, certioraridenied, 288 Ala. 742, 265 So.2d 175, certiorari denied,93 S.Ct. 930, 409 U.S. 1117, 34 L.Ed.2d 701; Rainer v. State, Ala.Cr.App., 342 So.2d 1348.
We cannot agree with appellant that the trial court erred in refusing to charge the jury on the offense of manslaughter in the second degree. It is true that an indictment for murder in the first degree does contain the charge of manslaughter in the second degree but under our rules there are two requirements necessary to sustain a conviction of a person for a crime. One, the pleadings must charge a crime and second, the evidence must prove a crime. The appellant under the facts contained in this record and all reasonable inferences to be drawn from them could not have been found guilty of manslaughter in the second degree. Manslaughter in the second degree is where it plainly appears that neither death nor great bodily harm was intended, but death was accidentally caused by an unlawful act, or an act strictly lawful in itself, but done in an unlawful manner and without caution. Where there is no evidence tending to show that the killing was unintentional or accidental, a charge on manslaughter in the second degree is unnecessary and is not proper. Fulghum v. State, 291 Ala. 71, 277 So.2d 886; Williamsv. State, 251 Ala. 397, 39 So.2d 37; Green v. State, 271 Ala. 106, 122 So.2d 520.
We have searched the record for any errors prejudicial to the defendant and have found none.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by the Honorable Joseph J. Mullins, a retired Circuit Judge, serving as a Judge of this Court under the provisions of Section 6.10 of the new Judicial Article (Constitutional Amendment No. 328, Act # 1051, 1973); his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.