## THE STATE v. HUXFORD.

1. **Evidence:** OPINION OF WITNESS: INTOXICATION. A witness may state whether or not in his opinion a person was intoxicated, and is not confined to a statement of the conduct and demeanor of the party inquired about.

2. ———: SIMILAR ACTS: INTOXICATION. Upon the trial of a person indicted for being found in a state of intoxication, evidence respecting the conduct of defendant at other times when intoxicated is admissible, for the purpose of showing the character of the acts relied upon as evidence in the case.

3. **Instruction:** HOW TO BE INTERPRETED. The language of an instruction is to be interpreted in a usual, ordinary and natural sense, and it will not be presumed to intend a remote and unusual state of facts, to which it might possibly, but would not, in the ordinary course of things, apply.

*Appeal from Webster District Court.*

THURSDAY, OCTOBER 18.

THE defendant was convicted of having been found in a state of intoxication, and now appeals to this court.

*Miracle & Kamrar*, for appellant.

*M. E. Cutts, Attorney General*, for appellee.

The State v. Huxford.

ADAMS, J.—I.  A witness for the State being asked what the defendant's condition was, answered: "He was intoxicated." It is claimed by the defendant that the testimony was inadmissible; that the fact of intoxication was the ultimate fact to be determined by the jury, and that it was proper for the witness to state only the conduct and demeanor of the defendant.

1. EVIDENCE: opinion of witness: intoxication.

Witnesses cannot in general give their opinions, and must be confined in their testimony to facts which are matters of direct observation, rather than deduction or inference.  There are cases, however, where evidence of the observed facts alone, as distinguished from the inferred facts, is not especially valuable, and where an inference based upon the observed facts, without any special skill or technical knowledge on the part of the observer, is valuable.  Among them is the case of intoxication. In *People v. Eastwood*, 14 N. Y., 562, MITCHELL, J., said: "A child six years old may answer whether a man whom it has seen was drunk or sober, but the child could not probably describe the conduct of the man, so that from the description others could decide the question.  Whether a person is drunk or sober, or how far he is affected by intoxication, is better determined by the direct answer of those who have seen him, than by their description of his conduct."  It was accordingly held in that case that the witness might state whether the defendant was intoxicated or not, and such we have no doubt is the correct rule.

It is true that upon the question of insanity, which is similar to that of intoxication, it has been doubted whether non-experts should be allowed to give an opinion, even though based upon their own observation.  There has been much conflict in the decisions, but we believe that the weight of authority now is that such an opinion is admissible if accompanied by a statement of the facts upon which it is based.  *Dunham's Appeal*, 27 Conn., 193; *Dewitt v. Barley*, 9 N. Y., 388; 17 N. Y., 340; *Clary v. Clary*, 2 Ired., 78; *Ashcraft v. De Armond*, 44 Iowa, 229.

II.  The District Court allowed evidence on the part of the State to be given as to the conduct of the defendant at other

times when intoxicated. This is now assigned as error. Such evidence would be clearly inadmissible for the purpose of showing that the defendant was intemperate, and that therefore it was not improbable that he was intoxicated at the time alleged. But it was, we think, proper to show how the defendant is accustomed to act when intoxicated, for the purpose of giving character to the acts which are relied upon as evidence of the intoxication in question. Such appears to have been the object for which the testimony was introduced. One of the witnesses had testified that the defendant used abusive language, and had a peculiar look, such as he has at times; that it was not such a look as he has when sober. The witness was then asked whether he had ever seen the defendant in a state of intoxication prior to that day, and he answered: "I have. His conduct then and upon this occasion corresponded. Mr. Huxford is usually a gentleman."

*2. ——: similar acts: intoxication.*

III. The court instructed the jury as follows:

"By the law of the State of Iowa, it is made a crime for any person to become intoxicated by the use of intoxicating liquor." Section 1548 of the Code provides that "if any person shall be found in a state of intoxication, he shall be deemed guilty of a misdemeanor." It is claimed that merely *to be* in a state of intoxication is not a crime, under this statute, and that, to constitute a criminal offense, it is necessary that the intoxicated person should be found, or seen by some person. If this position of appellant should be conceded, still this instruction would be error without prejudice, for there is no conflict in the evidence that the defendant appeared publicly upon the streets, and that his condition was observed by many persons. If defendant was in a state of intoxication, there is no conflict in the evidence that he was *found* in that state.

IV. The court instructed the jury as follows: "When any person, from the use of intoxicating liquors, has affected his reason or his faculties, or has rendered him incoherent of speech, or has caused him to lose control in any manner, or to any extent, of the action or motions of his person or body, such person, in contemplation of law, is intoxicated." The giving of this instruction is

*3. INSTRUCTION: how to be interpreted.*

assigned as error. It is claimed that if the defendant, under the advice of his physician, had taken a table spoonful of whisky, whereby his faculties were brightened and improved, the jury must, under this instruction, find that he was. intoxicated in contemplation of law, and convict him. This is not the sense in which the words employed by the court are ordinarily and usually understood. It is true that the reason and the faculties may be affected beneficially, as well as injuriously, and it is possible that under certain conditions this beneficial result may be produced by intoxicating liquors. But, if we say of one his reason and his faculties were affected by the use of intoxicating drinks, we would not ordinarily or reasonably be understood to mean that his reason was strengthened and his faculties were improved. Upon the contrary, we would usually be understood to mean that his reason was impaired and his faculties were to some extent blunted. It is not proper for us to seek after some far fetched and unusual signification of the language of an instruction, and to reverse a cause for the reason that the language is susceptible of that construction, or might, possibly, have been so understood. We should give to language its. usual and ordinary meaning. The latter part of the instruction shows clearly that the court referred to an injurious, and not to a beneficial affection of the faculties and reason. It is further claimed that, under this instruction, if the jury believed that the defendant, ten years before his arrest, had been addicted to the use of intoxicating liquors to excess, and that his reason or faculties had thereby been affected, they must find that he was, in contemplation of law, intoxicated on the day named in the information, although he had not tasted intoxicating liquors for ten years. This also would be a very forced and unnatural construction of the language. It is scarcely possible that it was so understood by the jury. All the evidence shows that the defendant was on trial for being under the influence of intoxicating liquors recently imbibed. There is nothing in the case to give any countenance to the notion that he could have been laboring under the permanent effects of a course of dissipation indulged in many years before.

AFFIRMED.