## Roberts v. Commonwealth.

(Decided May 29, 1936.)

R. B. ROBERTS and C. A. NOBLE for appellant.

B. M. VINCENT, Attorney General, and ROSCOE VINCENT, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Chester Roberts has appealed from a judgment imposing upon him three years' confinement in the penitentiary for manslaughter.

### The Facts.

Friday, September 6, 1935, was relief day in Hazard, Ky., and a number of men, women, and children had congregated in and about the Armory or Dix building which is situated on the west side of East Main street in that city, whereat relief was then being distributed.

Roberts had bought a secondhand Chrysler sedan a day or so before, and on this morning he had driven from his home at Allock in Clay county to Hazard, bringing with him his wife and children to have some dental work done. There is a garage just north of and adjoining this Dix or Armory building, which sits back something like 20 feet from the sidewalk, while the Dix or Armory building is built out flush with the sidewalk. Henry Sizemore was quite an old man, and

he was standing in front of this garage, and was leaning against the north side of this Dix or Armory building and about 2 feet from its northeast corner.

After leaving his family at the dental parlor, Roberts started to this garage for the purpose of having some work done on the lights of his car. About 9 a. m., as he approached from the north and started to drive into this garage, he testifies he sounded the horn two or three times (no other witnesses testify to hearing any horn), the crowd parted, some moving to the north and some to the south, and Roberts started between the two groups across the sidewalk into the garage.

To enable one to cross this sidewalk and enter this garage the curbing of the sidewalk had been broken and battered off, and, as Roberts' machine started onto this sidewalk, the right front wheel struck something (probably the battered edge of the curb), which turned the course of the machine suddenly and sharply to the right. To avoid striking the members of the group to his right, Roberts steered sharply to his left, lost control of his machine, and it struck the north wall of the Dix building, and, catching Henry Sizemore between the bumper and the wall of the Dix building, cut off his left leg, and from the resulting shock and loss of blood Sizemore died that afternoon.

Roberts said at the time his brakes failed to work, that he had no brakes or something of that kind, but we have the evidence of a mechanic who drove this machine immediately after the accident in carrying the injured man to the hospital, and he testifies the brakes were all right, and it is perfectly apparent this homicide was the result of Mr. Roberts' lack of sufficient previous driving experience, because of which he became confused and lost control of the machine.

### Grounds Urged for Reversal.

Roberts did not even know the man he killed, and it is argued this homicide was wholly unintentional, and therefore was accidental, but Roberts was intentionally operating this car, and, although the results may have been utterly foreign to his intention, still he is liable for the results of his carelessness, whether he intended to kill any one or not, and we have so held in

numerous cases, many of which are cited in the recent case of Thacker v. Com., 263 Ky. 97, 91 S. W. (2d) 998.

Roberts demurred to the indictment, and argues that it charges two offenses, and it is rather long and confused, but, when Roberts read it, he knew with what he was charged, and his demurrer was properly overruled.

His motion for a directed verdict of acquital was properly overruled, and, but for one error pointed out later, there is no merit in his criticism of the instructions.

Mr. Roberts was driving between 8 and 10 miles per hour. The commonwealth was allowed to show that at that rate of speed this car could have been stopped in 15 feet. The defendant's objection to this was properly overruled.

The court sustained objections to defendant's efforts to show what he had said to the nurse at the hospital, to the sheriff, when he gave himself up, and to the sheriff after Sizemore died, and Roberts was arrested for manslaughter. Those objections were properly sustained, as these were only self-serving declarations.

Mr. Roberts was asked if he had a driver's license. No objection was interposed, and he answered, "Yes sir." The attorney for the commonwealth then went into this inquiry at great length, asking when and where he got it, etc. Defendant's counsel was vigorously objecting, the court was overruling the objections, and the defendant was dodging and evading, but was ultimately pushed to the point that to every question he would answer, "I don't remember." His embarrassment is perfect apparent even from the record.

By section 2739m-2, Ky. Stats. Supp. 1934, Roberts was required to have an operator's license, commonly known as a driver's license, and by section 2739m-29 he could be fined or imprisoned or both for not having such a license, but he was not on trial for not having such a license, nor was he on trial for the evasiveness of his testimony, yet both these matters may have influenced the jury in arriving at a verdict, and this error was emphasized by the court's including in the

instruction upon involuntary manslaughter this language:

"If you shall believe from the evidence beyond a reasonable doubt, that the defendant, Chester Roberts, in Perry County, Kentucky, and within twelve months next before the finding of the indictment herein and since the 3rd day of July, 1934, operated and drove an automobile upon the streets of the city of Hazard when there had not been issued to him a license by some circuit court clerk, of the State of Kentucky authorizing him to operate and drive an automobile upon the public highways of this State, and that while so doing, if he did so do, he ran said automobile against Henry Sizemore thereby inflicting injuries upon his person from which he within a year and a day thereafter languished and died, then" etc.

The quoted language should not have been embodied in that instruction nor should evidence upon that matter have been admitted. The failure of Roberts to have a driver's license was not the proximate cause of the death of Mr. Sizemore. The jury may have speculated that, if Roberts had been an experienced driver, this accident would not have happened, which we are sure is true, but the mere possession of a driver's license would not bestow that experience upon him.

It is argued for the commonwealth that Roberts was not found guilty under this instruction, but was convicted of voluntary manslaughter under a previous instruction.

We have, for example, often held in cases where an incorrect instruction on murder had been given and the accused had been convicted of manslaughter, that the error in the murder instruction was not prejudicial. The reason is obvious. An appellant with a two-year sentence for manslaughter is in no position to argue that, if a correct instruction on murder had been given, the jury might have found him guilty under it and sentenced him to death or life imprisonment, and he would not have had to suffer the lighter punishment for manslaughter, but we are referred to no case where we have affirmed a judgment under a reverse of those conditions.

The judgment is reversed for a new trial, to be had as here indicated.