## STATE v. PETERSON.

No. 7286.   Decided September 30, 1949.   (210 P. 2d 229.)

See 61 C. J. S., Motor Vehicles, sec. 666. Killing through negligent use of automobile, see note, 160 A. L. R. 515. See, also, 26 Am. Jur. 301.

*McCullough, Wilkinson & Boyce,* Salt Lake City, for appellant.

*Clinton D. Vernon,* Attorney General, *Robert S. Richards,* Assistant Attorney General, *George S. Ballif,* District Attorney, Provo, *C. N. Ottosen,* Salt Lake City, for respondent.

PRATT, Chief Justice.

The defendant was charged with and found guilty of involuntary manslaughter alleged to have been committed about 3:00 a. m., September 7, 1947, on highway 40, near Jensen, Utah. The evidence against the defendant is circumstantial.

The deceased, who was intoxicated at the time, along with one Lawrence Karen, also intoxicated, was being taken toward Vernal, Utah, from Artesia, Colorado. They were being driven in a Ford truck by Bert Karen, brother to Lawrence. Some little distance before they arrived at the town of Jensen, Bert drove off to the side of the road to relieve himself. Part of his truck protruded upon the highway. He got out of the truck and walked forward to the edge of the barrow pit which was rather steep in that locality. He did not know what his brother and the deceased did; but, looking back along the road over which he had driven, he saw lights coming. There was nothing unusual about the approach of this vehicle, such as speed, to attract his attention. When it arrived near his Ford truck it turned to the left to pass that vehicle, and about that time he

heard a thump. He went to investigate and found deceased on the paved part of the road near the side opposite to the side where he had parked his truck. Bert, with his brother, drove to Jensen and telephoned a highway patrolman named Hatch. They left deceased's body unprotected on the highway.

Patrolman Hatch was in Vernal and as he was leaving for the scene of the accident he stopped two different trucks that had come from the direction of the accident and ordered the drivers to jail to await investigation. The first truck he stopped was that of defendant, whose truck had a bent front light which was dim; and a dented fender. Hatch claimed that defendant was intoxicated; he found whiskey in defendant's truck. The other truck he stopped was one in which a man by the name of Gibbs rode. Gibbs testified that they had followed the defendant for a ways before they arrived at Jensen, and that he was not driving at an excessive rate of speed. He also stated that they did not pass any truck at the side of the road before arriving at Jensen. That defendant was intoxicated is disputed by some of the witnesses who saw him at the jail. Patrolman Hatch testified that he found a tooth on the axle of defendant's truck and this tooth was identified by a dentist as belonging to deceased.

It was some forty minutes after Bert Karen telephoned Hatch that the latter joined Bert and they returned to the scene of the accident. They found a Burlington Bus there with red flares burning to prevent any one hitting the body. A man by the name of Davis who was driving in the opposite direction to that driven by the Karen machine and that driven by defendant, stated that at about this time a passenger car passed him at about 50 or 60 miles per hour, and that it was steaming. Later, it stalled on a hill due to an overheated engine; and it was occupied by some drunken boys and some girls. Its radiator was smashed and the girls said they had hit a colt. Davis helped haul their car into

town. One of the boys who tried to guide the car was so drunk he could not steer it.

Defendant was driving his truck after having had his license revoked for driving while intoxicated; and before a new license had been issued him.

Defendant was charged with the following wrongdoing:

Driving at an excessively high rate of speed; failing to keep his truck under proper control; failing to observe the deceased; driving while under the influence of intoxicating liquor; failing to stop, investigate and report the accident; and driving when his license to drive had been revoked.

He has presented four general reasons why the decision of the lower court should be reversed. These reasons cover generally some 33 assignments of error. They are:

1. The admission of evidence of the revocation of defendant's drivers license;

2. The admission of evidence of defendant's alleged intoxication;

3. The failure of the court to direct a verdict of not guilty; and

4. The failure of the court to instruct properly as to involuntary manslaughter.

The first point presents to this court a question of the principles set forth in the case of *State* v. *Lingman,* 97 Utah 180, 91 P. 2d 457, 465.

Driving when one's license has been revoked is of the class of offenses mentioned in the *Lingman* case as malum prohibitum. Of such offenses, this court said therein:

"But we think arm (a) also refers to some acts which are malum prohibitum, but not all such acts."

Arm (a) refers to that part of our code section, Section 103-28-5, U. C. A. 1943, on involuntary manslaughter, which reads:

"Involuntary in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection."

We also stated therein that the "unlawful act" must be "reckless or in marked disregard for the safety of others." The implication is that the nature of the unlawful act must be such that it has potentialities of injury to others. For example: To drive through a stop sign ■ or to drive at a speed in excess of the legal maximum may, by the nature of the act itself, be dangerous to traffic because it has to do with the physical manipulation of the vehicle. A compliance with the requirements of speed limits or with the stop sign regulation, takes the use of the car out of that class of dangerous use. In other words, the compliance with the law affects the manner of handling the machine. The same cannot be said, however, as to the possession or lack of possession of a piece of paper upon which is written authority to drive. It does not affect the manipulation of the car one iota. It is comparable to driving without a license plate on the car. There is no connection between the manner of using and controlling the machine and the presence or absence of those plates. On the other hand, if the car was driven without any, or proper brakes, one can readily see a connection between their absence and the physical manipulation of the machine.

Under the principle of the *Lingman* case, the driving without a license—or after it has been revoked—is an offense malum prohibitum that is not the foundation for an involuntary manslaughter charge. With or without a license, the manner of driving is not affected. ■ We believe that appellant's point one is well taken. The admission of such evidence invites punitive measures without regard to the elements of the offense charged.

We see no merit to appellant's second point. The evidence of intoxication is in conflict. That is for the jury to determine.

As to the third point, the court could not very well direct a verdict without passing upon the questions of fact as to intoxication, and as to identity, of which latter point, the tooth is some evidence. Whether or not the story of the tooth should be believed, is a matter of the credibility of the witnesses; and that is for the jury. We do think, however, that the court should have instructed upon circumstantial evidence, as the evidence is such that the jury might reasonably conclude that defendant was not the one who ran into and killed deceased.

In view of what has been said above, we do not believe that it is necessary to say anything about the fourth point raised by the defense. The instructions upon involuntary manslaughter will, at a new trial, undoubtedly be modified to meet the issues as they will then be tried.

The verdict and judgment of the lower court is set aside and the case returned for new trial.

WADE, WOLFE, LATIMER and McDONOUGH, JJ., concur.