STATE of Iowa, Appellee,

v.

John D. DAVIS, Appellant.

No. 54755.

Supreme Court of Iowa.

April 13, 1972.

Lewis H. Jordan, Winterset, for appellant.

Richard C. Turner, Atty. Gen., Larry S. Seuferer, Asst. Atty. Gen., and William W. Don Carlos, Adair County Atty., for appellee.

UHLENHOPP, Justice.

This appeal presents several questions which arose in a prosecution for manslaughter.

The case involves a daylight collision of motor vehicles on a straight east-west blacktop highway having narrow shoulders, in Adair County, Iowa, on May 18, 1970. A rather wide valley lies between two low hills. The incident occurred on the west side of the east hill. Three drivers were involved.

Viewing the evidence in the light most favorable to the verdict, the jury could find that defendant John D. Davis went to a tavern in Fontanelle, Iowa, about noon on the day in question, where, according to his version, he had three bottles of beer and two cheeseburger sandwiches ("approximately three or four beers and a cheeseburger sandwich," according to the barmaid). He proceeded thence to another tavern in the town. There he spent the afternoon and, according to him, had four (or possibly five—the evidence is unclear) drinks of bourbon mixed with coke. He then got into his car, drove to the blacktop highway in question, and proceeded east.

That same day Fred I. Campbell was hauling rock from a quarry in a truck. He dumped his last load about 6:00 p. m. and started home. This took him east over the blacktop highway. He overtook defendant, who was proceeding at about 15 to 20 miles per hour. Defendant's car was weaving from the right side over the center line and back. Campbell passed defendant after following him some distance.

Campbell subsequently stopped at a stop sign. Defendant, going faster than previously, came up behind Campbell and stopped. Campbell saw the front end of defendant's car dip when the brakes were applied.

Campbell proceeded east, and defendant sat at the stop sign awhile. Presently defendant came up behind Campbell again. They eventually came to the west hill. As they started down the east slope of that hill, defendant came alongside Campbell. Both vehicles increased speed somewhat going down grade, but defendant did not increase his speed further to go around. At the bottom of the hill they were still side by side, so Campbell slowed up to let defendant pass. But defendant also slowed up. Campbell testified that defendant "looked to me like he was asleep with his head laying clear over on his left shoulder, both of his hands were on the steering wheel." The two drivers were then approaching a yellow no-passing line for the east hill ahead of them. Campbell testified further:

He was still alongside me. I knew one of us had to give going up the next hill, so I slowed up, and he slowed up, and I would speed up. He would speed up. He stayed right alongside me. My purpose in speeding up was that I wanted him to get in behind me. I knew we was up to the yellow line. My purpose in slowing down was to let him get ahead of me.

When the two vehicles approached the crest of the east hill in the no-passing zone, defendant was alongside Campbell, about even with the front of the box on the truck.

That afternoon Mrs. Helen E. Prichard and her young daughter had shopped in Creston, Iowa. Their trip home took them

west over the blacktop highway. They came over the crest of the east hill and met defendant's car coming toward them on their side of the road, with the Campbell truck beside it. Mrs. Prichard, driving, stepped on the brakes and skidded partially across the center line, leaving skid marks for about 126 feet. Campbell drove as far to his right on the blacktop as he could. Defendant apparently saw the Prichard car at the last moment and skidded his brakes about 22 feet. The Prichard car glanced off of the left front part of Campbell's truck and into the front of defendant's car. Campbell kept his truck upright and got it stopped. The front parts of the other two vehicles were badly damaged. Mrs. Prichard, who sustained a severed or damaged spinal cord from a fractured cervical spine as well as multiple skeletal injuries and lacerations, died at the scene. The marks and debris on the blacktop revealed the place that the collision occurred.

The prosecutor charged defendant with manslaughter in a three-count county attorney's information: count I charging generally wanton and reckless driving, count II charging driving while under the influence of intoxicating beverages, and count III charging wanton and reckless driving contrary to specified laws of the road. Defendant's demurrer to the information, objection to inclusion of count III, and motion for change of venue were overruled.

Defendant pleaded not guilty and the case went to trial. The evidence disclosed the circumstances we have related. Several witnesses who observed defendant at the scene or in the ambulance testified that he was under the influence of intoxicating liquor. Defendant's motion for a directed verdict was overruled, and several rulings were made adverse to him on points of evidence and on the instructions. The jury found defendant guilty. Defendant's motions for new trial and in arrest of judgment were overruled, and he was sentenced. Hence this appeal by him.

Defendant presents numerous assigned errors, which may be grouped thus: (1) Should a change of venue have been ordered? (2) Was the information demurrable? (3) Is driving while under the influence of an intoxicating beverage, resulting in the death of a person, a legal basis for the crime of manslaughter? (4) Was substantial evidence introduced in support of the information? (5) Was the jury instructed correctly on efforts to avoid collision? (6) Was recklessness submitted properly? (7) Did defendant have a fair trial? (8) Was error committed in evidentiary rulings? We have concluded that the judgment must be reversed because of error in one of the evidentiary rulings.

I. *Change of Venue*. Defendant's reliance in his motion for change of venue was on four newspaper articles which he contends engendered local prejudice. He cites Sheppard v. Maxwell, 384 U.S. 333, 86 S. Ct. 1507, 16 L.Ed.2d 600, and Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543.

The first article appeared in the Creston News Advertiser the day after the collision. It contained a factual account of the occurrence, without the detail we have related. The second article appeared a day later in the Adair County Free Press, also containing an account of what happened, somewhat longer but not in complete detail. (Defendant contends this second article reported the circumstances incorrectly. While the account may have been subject to misinterpretation in a couple respects, it was in substantial accord with the facts subsequently developed by the evidence.) The third article appeared a week later in the Adair County Free Press. That article related to a different collision, in which two boys on a motorcycle were killed. In the same issue of the Free Press, the fourth article appeared—an editorial pointing out that nine highway deaths had occurred in the county during the year, that most accidents are preventable, that many people are occasionally careless, and that motorists should not feel resentment if they

receive traffic tickets for infractions. No specific reference to the present collision, or any collision, was made. In none of the articles was the matter of intoxication mentioned.

Our statute provides, "The court, in the exercise of a sound discretion, must, when fully advised, decide the matter of the petition [for change of venue] according to the very right of it." Code, 1971, § 778.9. The statutory ground asserted in this petition (or motion, as it is denominated) is "that such defendant cannot receive a fair and impartial trial owing to . . . excitement or prejudice against the defendant in such county". § 778.2.

Actually, two legal bases are urged by defendant. One stems from the Sheppard and Estes cases: such extensive, repeated, and hostile publicity that prejudice to the accused and inability to receive a fair trial must be presumed. The principle applicable to this basis is stated thus in A.B.A. Standards Relating to the Administration of Criminal Justice, Standards Relating to Fair Trial & Free Press, 3.2(c) (1968):

> A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. This determination may be based on such evidence as qualified public opinion surveys or opinion testimony offered by individuals, or on the court's own evaluation of the nature, frequency, and timing of the material involved. A showing of actual prejudice shall not be required.

The other basis is the traditional one of actual excitement and hostility among the populace—a showing of prejudice in fact. Harnack v. District Court of Woodbury County, 179 N.W.2d 356 (Iowa) (approximately 100 affidavits showing hostility and excitement); see Spring, Change of Venue: A Need for Traditional Reemphasis, 54 Judicature 15.

Under the facts before the trial court, we think that the court did not abuse its discretion in overruling the motion as to both bases. The situation did not approach the continued and inflammatory publicity in Sheppard or in Estes. Defendant was not "tried in the press," nor was any showing made that any juror was misled or prejudiced by the articles. The articles were not inflammatory in tone, and the subject was not pursued in subsequent issues of the papers. The articles were typical of those which appear in county weeklies when a fatal automobile mishap occurs. Moreover, at the time of the ruling on October 13, 1970, the trial court could also conclude, in its discretion, that actual excitement and prejudice such as would deprive defendant of a fair trial were not shown. This assigned error cannot be sustained. State v. Niccum, 190 N.W.2d 815 (Iowa); State v. Albers, 174 N.W.2d 649 (Iowa); State v. Loney, 163 N.W.2d 378 (Iowa); State v. Ferguson, 249 Iowa 361, 86 N.W.2d 901.

We will say that since we conclude the case must be reversed on another ground, defendant may file another motion for change of venue before retrial if he believes he cannot obtain a fair trial in the county in the light of the circumstances then existing. We intimate no opinion, of course, upon the merits of any such motion. We will also say that when motions to change venue are overruled, counsel on both sides would be well advised to have voir dire examination of the jury reported. See State v. Williams, 245 Iowa 494, 62 N.W.2d 742.

II. *Information Demurrable?* The gist of defendant's demurrer to the information was that the statute on manslaughter is too general and does not specifically define the crime.

Substantially the same contention was made and rejected in State v. Shimon, 182 N.W.2d 113 (Iowa). We adhere to that decision.

III. *Driving Under Influence as Basis for Manslaughter.* Defendant contends that manslaughter could heretofore be predicated on "drunken driving" or on "driving in an intoxicated condition" (which he concedes mean the same thing, State v. Kellison, 233 Iowa 1274, 11 N.W.2d 371). But he says, correctly, that the offense has been changed in verbiage from driving "in an intoxicated condition" to driving "under the influence of an alcoholic beverage." Code, 1971, § 321.281. His argument proceeds in two steps: (a) driving in an intoxicated condition is different from driving under the influence of intoxicants, and (b) driving while under the influence of intoxicants is not sufficiently serious to constitute the basis for manslaughter though death of a person results. We cannot accept either step of the argument.

■ As to the first step, the definition of "driving in an intoxicated condition" usually employed is obtained by combining statements from two decisions long standing, State v. Huxford, 47 Iowa 16, 18 (when the use of intoxicants "has affected his reason or his faculties, or has rendered him incoherent of speech, or has caused him to lose control in any manner, or to any extent, of the action or motions of his person or body, such person, in contemplation of law, is intoxicated"), and State v. Pierce, 65 Iowa 85, 88, 21 N.W. 195, 197 ("when he is so far under the influence of intoxicating liquor that his passions are visibly excited or his judgment impaired by the liquor"). See State v. Stout, 247 Iowa 453, 74 N.W.2d 208; II Iowa Uniform Jury Instructions, No. 520.3 (1970). That definition applies equally to both expressions—driving in an intoxicated condition and driving while under the influence of intoxicants—and the two expressions thus mean essentially the same thing. As stated by the Committee on Uniform Court Instructions of The Iowa State Bar Association (II Iowa Uniform Jury Instructions, supra, No. 520.3, Note), "The offense under said Code section [321.281] is now operating while 'under the influence of an alcoholic beverage' rather than while 'in an intoxicated condition'. The Committee believes that the amendment makes no change in elements of the offense and that being 'under the influence of an alcoholic beverage' is synonymous with being 'in an intoxicated condition'." See also Rainey v. State, 31 Ala.App. 66, 12 So.2d 106; Sexton v. State, 29 Ala.App. 336, 196 So. 742; People v. Dingle, 56 Cal.App. 445, 205 P. 705; State v. Dudley, 159 La. 872, 106 So. 364; State v. Bryce, Me. 1968, 243 A.2d 726; Uldrich v. State, 162 Neb. 746, 77 N. W.2d 305; Southern Nat. Bk. of N. C. v. Lindsey, 264 N.C. 585, 142 S.E.2d 357; State v. Stephens, 262 N.C. 45, 136 S.E.2d 209; Daniels v. State, 155 Tenn. 549, 296 S.W. 20; Jones v. State, 132 Tex.Cr.R. 445, 104 S.W.2d 871; Maedgen v. State, 132 Tex.Cr.R. 397, 104 S.W.2d 518.

■■ As to the second step of defendant's argument, the State's manslaughter charge (predicated on defendant's driving while under the influence of intoxicants) involves involuntary manslaughter based on death resulting from the commission of a misdemeanor which is in itself wrongful (malum in se). State v. Kellison, 233 Iowa 1274, 11 N.W.2d 371. Even if a technical distinction did exist between driving while in an intoxicated condition and driving while under the influence of intoxicants, we think the latter as a misdemeanor is itself sufficiently wrongful to constitute a foundation for involuntary manslaughter. While an automobile is not per se a dangerous instrumentality, it may become one if the driver is under the influence of intoxicants as the case before us amply demonstrates. State v. Richardson, 216 Iowa 809, 249 N.W. 211. See also State v. Kellison, supra; Keller v. State, 155 Tenn. 633, 299 S.W. 803.

We hold this assigned error is untenable.

IV. *Sufficiency of Evidence.* Defendant next contends the evidence was insufficient to support the charge of intoxicated driving or of recklessness.

As to the sufficiency of the proof that defendant was under the influence of intoxicants, the evidence is replete with testimony that defendant was intoxicated. Defendant himself admitted to consuming seven drinks between noon and the time he left on the fateful drive. His manner of driving and his appearance at the wheel, witnessed by Campbell, were corroborative. This issue was manifestly for the jury.

The issue of reckless driving was also for the jury, together with the specifications of that charge. In this connection, if the jurors were not persuaded defendant was intoxicated, they could still take his drinking into consideration under the charge of recklessness. State v. Graff, 228 Iowa 159, 290 N.W. 97; State v. Salmer, 181 Iowa 280, 164 N.W. 620. The evidence of recklessness was stronger here than in other cases in which submission has been approved. State v. McLaughlin, 250 Iowa 435, 94 N.W.2d 303; State v. Graff, supra. As to the State's specifications of recklessness, substantial evidence was introduced that defendant failed to yield half the traveled way by turning to the right. Substantial proof was also adduced that defendant drove to the left in overtaking and passing when that side was not visible for a sufficient distance, when approaching the crest of a grade, and when the roadway was marked no passing. The jury was instructed, of course, that violation of the law of the road would not alone be sufficient and that the State had to prove wanton and reckless violation of the law of the road.

The charges of recklessness and intoxicated driving were supported by substantial evidence.

■ V. *Instruction on Effort to Avoid Collision.* Defendant requested an instruction that even if he was aware of a dangerous situation, recklessness would be shown only if he did not exercise the slightest care to avoid injury to others and that the evidence of his skidmarks for 22 feet would indicate he was exercising care.

In argument, defendant cites civil cases in which a driver who endeavored to avoid a collision was exonerated of recklessness under particular facts.

The cases defendant cites are inapposite in the present factual situation. As to defendant's belated effort to stop, the present case is ruled by what was said in State v. McLaughlin, 250 Iowa 435, 442, 94 N.W.2d 303, 307:

One who, by his recklessness has created a hazard which he should have foreseen and guarded against, is not exonerated from the charge of gross indifference to the safety of others by a futile last minute effort to retrieve the situation and avoid the danger and injury. Such an attempt may have some bearing upon the degree of the indifference, but it is not an absolute cleaning of the slate.

The trial court properly instructed along these lines.

VI. *Counts I and III on Recklessness.* In addition to count II on intoxication, the information contained two counts on recklessness—count I charging recklessness generally and count III charging specifications of recklessness. Defendant admits this appears to have been the procedure employed regarding recklessness in State v. McLaughlin, 250 Iowa 435, 94 N.W.2d 303. But he contends only two bases for manslaughter are involved, intoxication and recklessness, and that as to recklessness the information should have contained only the first count.

■ We believe defendant is right in his contention but wrong in thinking reversible error was committed on this account. The case does involve but two bases —intoxication and recklessness. The information need not allege details as to how the recklessness was committed, as is done in a civil petition containing specifications of negligence or recklessness. Indeed, to do so flies in the face of the Short Indictment Act, which did away with the lengthy and technical common law indictment. Per-

kins, Short Form of Indictment, 14 Iowa L.Rev. 129; Perkins, Short Indictment Act, 14 Iowa L.Rev. 385. The rules governing indictments apply to informations, and § 773.4 provides:

> The indictment may charge, and is valid and sufficient if it charges, the offense for which the accused is being prosecuted in one or more of the following ways:
>
> 1. By using the name given to the offense by statute.
>
> 2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense, or in terms of substantially the same meaning, as is sufficient to give the court and the accused notice of what offense is intended to be charged.
>
> The indictment may refer to a section or subsection of any statute creating the crime charged therein, and in determining the validity or sufficiency of such indictment regard shall be had to such reference.

Then § 773.5 provides:

> No indictment which charges the offense in accordance with the provisions of section 773.4 shall be held to be insufficient on the ground that it fails to inform the defendant of the particulars of the offense.

See also § 773.35 (form for manslaughter charge: "A.B. unlawfully killed C.D.").

■ A defendant is entitled to a bill of particulars if the indictment and minutes of testimony fail to inform him sufficiently to enable him to prepare his defense. § 773.6. Thus if the indictment and minutes do not disclose that recklessness or intoxication is the basis of the charge, the prosecutor may be required so to allege. He may allege those bases conjunctively or alternatively. § 773.25. But he is not required to, nor should he, spell out evidentiary details in specifications of recklessness as in a civil pleading, contrary to the intent of the Short Indictment Act. He can obtain submission of the specific reckless acts proven or of the general recklessness proven (or both) by appropriate requested instructions.

Here, however, the specifications of recklessness were spelled out, in addition to the general charge. But defendant was not harmed. Indeed, defendants frequently seek to have such evidentiary details alleged.

■ Turning to the instructions, it is true that in the statement of the case, the trial court set out both counts dealing with recklessness, in addition to the intoxication count. But in Instruction 9, the court restricted the State and specifically instructed that the State had to prove one or both of *two* bases for the charge: intoxication or recklessness. Indeed, the court went further—it did not submit the general charge of recklessness at all. As to recklessness the court tied the State down to "one or more of the unlawful acts in an unlawful manner hereinafter submitted to you in Instruction 18." In Instruction 18 the court told the jury the enumerated specifications were the only ones they could consider on recklessness. The error here was in defendant's favor.

We cannot sustain this assignment of error.

VII. *Fair Trial.* Without specific assignments of error, defendant contends that a number of acts by the prosecutor and rulings by the trial court deprived him of a fair trial. We have carefully examined the proceedings as to each complaint. The items involve acts and rulings which typically occur in long and hotly contested trials of this nature. Considering the proceedings as a whole, we believe the items complained of did not deprive defendant of a fair trial.

VIII. *Evidentiary Rulings.* Defendant contends the trial court erred in admitting testimony by several witnesses.

(a) Defendant first says that Fred I. Campbell should not have been permitted to testify or mark exhibits as to the place at which the vehicles came together—the point of impact. Defendant asserts that Campbell's testimony constituted opinion evidence and that a sufficient foundation was not laid.

We think, however, that Campbell was not giving an opinion. He was stating his observation. He certainly had personal knowledge as to where the Prichard car and his truck collided. Moreover, defendant's car was beside Campbell, at the front of Campbell's truck box. The Prichard car glanced off the left front of the truck and into defendant's car. This was almost a single collision; the combined speed of vehicles going in opposite directions was involved; the time lapse between Mrs. Prichard's striking Campbell's truck and her striking defendant's car must have been a mere flash. In telling where this event occurred, Campbell was stating a fact. Weilbrenner v. Owens, 246 Iowa 580, 586, 68 N.W.2d 293, 297 ("Essentially the witness testified to a matter of observation"); Henriksen v. Crandic Stages, 216 Iowa 643, 246 N.W. 913; Zellmer v. McTaigue, 170 Iowa 534, 153 N.W. 77; Lange v. Affleck, 160 Md. 695, 155 A. 150. See McCormick, Opinion Evidence in Iowa, 19 Drake L. Rev. 245, 247–248. We hold that Campbell's testimony was admissible.

(b) Sheriff Don L. Foster and Iowa Highway Patrolman Dennis Smith did, however, give opinions on the point of impact, over defendant's objections. These investigating officers arrived shortly after the collision and observed the positions of the vehicles, the debris, and the marks on the roadway leading to the vehicles. Patrolman Smith returned two days later and examined the area again. The two officers testified as to their qualifications and their observations. Their opinions on the point of impact were admissible under our decisions. Brower v. Quick, 249 Iowa 569, 88 N.W.2d 120; Hamdorf v. Corrie, 251 Iowa 896, 101 N.W.2d 836; Long v. Gilchrist, 251 Iowa 1294, 105 N.W. 2d 82; Lucas v. Duccini, 258 Iowa 77, 137 N.W.2d 634; Mickelson v. Forney, 259 Iowa 91, 143 N.W.2d 390; Lessenhop v. Norton, 261 Iowa 44, 153 N.W.2d 107; Dougherty v. Boyken, 261 Iowa 602, 155 N.W.2d 488; Schmitt v. Jenkins Truck Lines, 170 N.W.2d 632 (Iowa).

(c) Defendant objected to testimony as to defendant's intoxication given by Sheriff Foster and Patrolman Smith as well as by four individuals who were not law officers.

Defendant does not deny the rule "that a witness may state whether or not another was intoxicated at a particular time, without narrating the facts on which he bases his opinion; and it is also permissible for a nonexpert witness to state how far another was affected by intoxication." State v. Cather, 121 Iowa 106, 108, 96 N.W. 722. But defendant says that before a witness may express an opinion on a person's intoxication, the witness must have had reasonable opportunity to observe the person, and the witnesses here had no such opportunity. Defendant is right that a witness must have had such opportunity. State v. Fiedler, 260 Iowa 1198, 1202, 152 N.W. 2d 236, 239 ("'A witness who has observed a person may express an opinion whether he is intoxicated without first stating the facts on which the opinion is based. . . . But such opinion must be based on observation. And the record must show the witness had a reasonable opportunity for observation to be competent.'"); State v. Musack, 254 Iowa 104, 116 N.W.2d 523; State v. Helgerson, 247 Iowa 651, 75 N.W. 2d 227; Bohnsack v. Driftmier, 243 Iowa 383, 52 N.W.2d 79; 31 Am.Jur.2d Expert & Opinion Evidence § 101 at 623; 23 C.J.S. Criminal Law § 866 at 413. But defendant is not right that the witnesses here lacked such opportunity. Two of the witnesses rode in the ambulance with defendant to the hospital. A third witness observed defendant at the scene trying to

remove a cigarette from his pocket and saw defendant closer a second time when he spoke to the witness. A fourth witness heard defendant talk "like he had a thick tongue" at the scene and said defendant's breath smelled of an alcoholic beverage. Both of the officers had ample opportunity to observe defendant's condition. We are clear that the trial court was within its discretion in permitting these witnesses to express their opinions on intoxication and that the extent of the respective witnesses' observations went to the weight rather than to the admissibility of the testimony.

(d) Finally, defendant contends prejudicial error occurred in a ruling regarding his driver's license. Questioned by the prosecutor, Patrolman Smith first testified on this subject that he requested defendant's license, which defendant produced. This followed in the testimony:

Q. Did the defendant have a valid driver's license?

Mr. Jordan: Objected to as incompetent, irrelevant and immaterial to any issues in this cause.

The Court: Overruled.

A. No, sir, he did not.

The subject was pursued no further. Whether defendant's license had expired or was invalid for other reasons does not appear.

■■ The State claims that defendant did not specify the ground of his objection and that his general objection was insufficient. It is true that when the general objection of "incompetent, irrelevant, and immaterial" is overruled, error cannot ordinarily be predicated on the ruling, for the objector must specify the ground. Wickman v. Illinois C.R.R., 253 Iowa 912, 114 N.W.2d 627. We are inclined to think, however, that the situation here comes within the exception that the ground being urged was manifest—irrelevancy. See Linge v. Iowa State Highway Comm'n, 260 Iowa 1226, 150 N.W.2d 642; Frederick v.

Shorman, 259 Iowa 1050, 147 N.W.2d 478; International Harvester Co. v. Chicago, M. & St. P. Ry., 186 Iowa 86, 172 N.W. 471.

■ Was the testimony relevant? Failure to have a valid driver's license has been held relevant in cases of this kind. State v. Yowell, 184 Kan. 352, 336 P.2d 841; Commonwealth v. Romig, 22 Pa.Dist. & Co.R. 341, 27 Berks 41. Other courts have held the evidence to be irrelevant. Madison v. State, 40 Ala.App. 62, 109 So.2d 749; Roberts v. Commonwealth, 264 Ky. 545, 95 S.W.2d 23; Commonwealth v. Williams, 133 Pa.Super. 104, 1 A.2d 812; State v. Peterson, 116 Utah 362, 210 P.2d 229. We believe the latter courts have the better of the issue, in the absence of a showing of a causal relationship between the invalid license and the collision. Note, 10 Temple L.Q. 67. This view is consistent with our rule in civil cases. Ruckman v. Cudahy Packing Co., 230 Iowa 1144, 300 N.W. 320; Schuster v. Gillispie, 217 Iowa 386, 251 N.W. 735. See also Hardwick v. Bublitz, 254 Iowa 1253, 119 N.W.2d 886 (causal relationship shown under particular facts—defendant's knowledge of driver's incompetence). No causal relationship appeared here, and the trial court should have sustained the objection.

Was admission of this evidence prejudicial? Iowa follows the rule that "error in admission of evidence must be prejudicial to an accused to constitute cause for reversal." State v. Wallace, 259 Iowa 765, 771, 145 N.W.2d 615, 619. The court has said, "A common test to determine whether a ruling on the admission of evidence was prejudicial is whether, upon a review of the record, it sufficiently appears the rights of the complaining party have been injuriously affected by the error or he has suffered a miscarriage of justice." State v. Mayhew, 170 N.W.2d 608, 619 (Iowa). See Napier v. State, 266 N.E.2d 199 (Ind.).

This evidence revealed a separate offense by defendant and no showing was made of a causal connection between the invalid license and the collision. We conclude that

the erroneous admission of this evidence requires a new trial. Madison v. State, 40 Ala.App. 62, 109 So.2d 749; Montgomery v. State, 44 Ala.App. 129, 203 So.2d 695; State v. Peterson, 116 Utah 362, 210 P.2d 229; see also Giles v. Gardner, 287 Ala. 166, 249 So.2d 824; Roberts v. Commonwealth, 264 Ky. 545, 95 S.W.2d 23.

Reversed.

All Justices concur except LeGRAND, J., who dissents, and REYNOLDSON, J., who takes no part.

LeGRAND, Justice (dissenting).

I dissent from Division VIII(d) and, since that is the sole basis for review, I would affirm.

The majority says it was reversible error to permit an answer, over objection, which disclosed defendant was operating a motor vehicle without a valid driver's license. The question, objection, answer, and ruling of the court are set out verbatim in the majority opinion.

The objection made at trial was simply that the question called for evidence which was incompetent, irrelevant and immaterial. The majority acknowledges our rule that such a general objection ordinarily preserves nothing for review but reaches the conclusion it is sufficient here because the ground urged was "manifest" and needed no elaboration to properly alert the trial court to the reasons for it.

I must disagree with this on several grounds. In the first place, as the majority points out, the evidence might have been relevant upon a showing of causal connection between the failure to have a valid driver's license and the eventual accident. When the question was asked this possibility had not yet been foreclosed. Perhaps the State should have been required to commit itself on this issue then; or perhaps a motion to strike the testimony with a cautionary instruction to the jury should have been made when the causal connection was not eventually established.

But those things do not touch the matter before us.

I cannot accept the argument that this question *when asked* was so obviously and patently irrelevant that the trial court should have recognized, without more, the real basis for the objection. I would hold there is nothing preserved by this record for review.

There is another even stronger reason why the majority conclusion is untenable. It is this: The point upon which the case is reversed is not an issue on this appeal. The irrelevancy which the majority says was so manifest it was immediately recognizable apparently completely escaped defendant's counsel, although he is the one who made the objection. It is not relied on in the written brief; it was not argued orally. The *sole* reason now urged is that the question and answer discloses defendant was guilty of another crime (driving without a valid driver's license in violation of section 321.174, The Code) under circumstances not within any of the exceptions which permit the admission of such evidence.

Unless the majority is prepared to say an objection to testimony as incompetent, irrelevant and immaterial raises the specific ground now relied on—and I cannot concede it would do so—then the matter is being raised here for the first time. We have frequently said error cannot be first raised on appeal. See State v. Coffee, 182 N.W.2d 390, 393 (Iowa 1970) and authorities there cited.

While I do not agree the admission of this evidence was reversible error, there should be no new trial even assuming the majority is correct in that conclusion. The majority, I believe, finds itself in the strange position of reversing on a ground asserted in the trial court but abandoned on appeal. Defendant, on the other hand, seeks a reversal for reasons urged for the first time on appeal.

Neither position is sound and the trial court should be affirmed.