Robert HAWKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 12692.

District of Columbia Court of Appeals.

Argued Oct. 3, 1978.

Decided Nov. 16, 1978.

---

Scott J. Daniels, Washington, D. C., appointed by this court, for appellant.

Peter C. DePaolis, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and Frederick A. Douglas, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

KERN, Associate Judge:

Appellant contends his conviction for involuntary manslaughter, D.C.Code 1973, § 22–2405,[1] must be reversed because the prosecutor improperly introduced at trial

---

1. Appellant was also convicted of violating Traffic and Motor Vehicle Regulations of the District of Columbia in (1) leaving the scene of the accident which involved personal injury and (2) driving at an unreasonable speed.

evidence of another offense and "the prosecutor also unfairly used information provided by the defense counsel to impeach the testimony of the defendant." (Brief at 23.) We assess these asserted trial errors by court and prosecutor against the evidence presented to the jury by the government.

Appellant was driving his auto at about 50 miles per hour down P Street, N.W., between First and Fourth Streets. It was dark and he was drinking beer, as he had been doing before entering the auto. After stopping for a light at Fourth Street, he boasted to his passengers, "Watch me catch that car." In attempting to do so, he achieved a speed of approximately 60 miles per hour and drove through a stop sign. He continued his extraordinary speed despite being warned by a passenger to slow down and ultimately was forced to swerve suddenly to avoid striking the car ahead when it turned right. His car went out of control, skidded sideways almost 60 feet and smashed into a parked vehicle with such force as to push it over the curb and against a child on the sidewalk. The girl died as a result of multiple fractures and internal injuries. Appellant left the scene before the police could arrive and did not return when one of his passengers caught up with him and told him he had just killed a little girl. Subsequently, he stated to his son, who was another one of the passengers, that he had been in a terrible accident in which someone had been killed—but still he did not return. He instructed his son to omit certain facts from his statement to the police.

The government, with approval from the trial court but over defense objection, also presented testimony from the District's custodian of traffic records that appellant did *not* at the time of the homicide have a permit to operate a motor vehicle. Appellant now argues that this evidence had only minimal probative value but was highly prejudicial since it constituted evidence of another crime, *viz.*, driving without a permit, from which the jury might infer guilt on the manslaughter charge.

The government responds that the testimony by its witness that appellant had operated the auto without a license on the night of the child's death, while concededly evidence of another crime, was probative because it was evidence tending to show appellant's recklessness or gross negligence, proof of which was essential to its involuntary manslaughter prosecution. *United States v. Bradford*, D.C.App., 344 A.2d 208 (1975). ("The requisite intent in involuntary manslaughter is supplied . . . by gross or criminal negligence, a term recently defined as lack of awareness or failure to perceive the risk of injury from a course of conduct under circumstances in which the actor should have been aware of the risk.") *Id.* at 215. Therefore, says the government, the trial court properly admitted the testimony at issue under the "intent" exception in *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). Alternatively, the government argues that even if it was error to admit the testimony, it was harmless under the *Kotteakos*[2] rule since it could not have substantially swayed the jury's verdict in light of the strength of the prosecution's case.

We view under the circumstances of this case the testimony in dispute as having considerable prejudice and little probative value. *Punch v. United States*, D.C. App., 377 A.2d 1353 (1977), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). We are not persuaded that there is any causal connection between the failure of appellant to have a driver's license when he drove his car and the homicide occurring here. *State v. Davis*, 196 N.W.2d 885 (Iowa 1972). In addition, while driving without a license is unlawful, it does not constitute evidence that appellant, on the night in question, was grossly or criminally negligent.[3] *Id.* The government argues that while this evidence standing alone may

---

2. *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

3. The court gave no limiting instruction, sua sponte, concerning the testimony by this witness. *See Wooten v. United States*, D.C.App., 285 A.2d 308 (1971).

have little probativeness, when added to the other evidence of appellant's reckless intent it becomes just one more component of the proof of such recklessness. This we cannot allow, for then we would open the way for evidence of another offense, conceded to have minimal probativeness, to be added onto evidence of higher probativeness and thus become more probative itself and then admitted. Accordingly, we deem the receipt into evidence of this testimony concerning another offense over defense objection to have been error here.[4] However, we conclude the error was harmless under *Kotteakos* given the overwhelming nature of the government's case which demonstrated that appellant, while drinking, drove at highly unreasonable speeds through downtown streets after dark despite a warning to slow down, lost control of his car, and then stopped suddenly and skidded with such force as to drive a parked vehicle over the curb and fatally injure the decedent. *Cf. State v. Davis, supra.*

We turn now to appellant's claim that the prosecutor in cross-examining him took unfair advantage by using certain information defense counsel gave to the court at a bench conference during the course of trial. The sequence of relevant events is this. Defense counsel in his opening statement to the jury advised that both appellant and his son, one of the two passengers in the auto on the night of the fatality, "will tell you" that appellant stopped his car because he believed he was being followed, that after that car had moved ahead of him he proceeded down 6th Street until "he saw what he believed to be a motor vehicle coming against the direction that he was proceeding" with its lights off, and that "he swerved to the left in order to avoid this motor vehicle." (Record at 13–14.)

Both appellant and his son in fact, however, testified at trial in the defense case that he was forced to swerve to the left in order to avoid striking the rear of a car preceding him which turned suddenly without warning.

Defense counsel, after hearing appellant so testify from the witness stand on direct examination, advised the court out of the jury's hearing at a bench conference that appellant's testimony "is different than what I have ever been told before and . . it caught me by surprise." He explained that he had "always been told that there was a vehicle coming against him and that's why he did that." (Record at 225–26.) He stated that he could "only ask general questions [of appellant on direct examination] . . . [and] . : . I cannot argue affirmatively his theory to the jury . . ."

When the prosecutor cross-examined appellant he asked, among other things, whether appellant was "sure" the accident occurred because a car in front of him going in the same direction turned, and also whether there was a car "coming toward you." Appellant answered that he was sure as to the accident's cause, but that he couldn't recall whether a car was coming at him. The prosecutor then asked him:

Well, had you ever at a different time prior to today recalled a car coming down the street?

Defense counsel objected and the court, after a colloquy with counsel, interposed that the witness had already said "no." The prosecutor then asked whether appellant had been "present when your counsel gave his opening statement" and elicited a "yes" answer. The Assistant United States Attorney then asked appellant whether he recalled counsel "stating that there was a car coming down the street towards you," to which appellant testified in the affirmative. The prosecutor then asked whether "it," the opening statement, was inaccurate and received once again a "yes" answer.

When the prosecutor then asked whether there was "a car coming towards you" ap-

---

4. While failure to have a valid license has been considered relevant to intent in some jurisdictions, e. g., *State v. Yowell,* 184 Kan. 352, 336 P.2d 841 (1959), we cannot agree with this rationale. Only where some causal connection between the lack of license and an injury exists can this evidence be relevant. *State v. Davis, supra.*

pellant testified "there was." Further questions and answers on cross-examination produced a more detailed explanation by appellant as to how he had to swerve to avoid that car coming towards him in the wrong lane. This explanation, given on cross-examination was consistent with the defense attorney's opening statement.

Appellant seizes upon one question posited by the prosecutor near the beginning of his cross-examination, *viz.*, "Well, had you ever at a different time prior to today recalled a car coming down the street?", and argues that this was an insinuation by the Assistant "that he knew something more than was in evidence." (Brief at 19.) Given the facts that there was an immediate defense objection and the court interposed with the statement to the jury that appellant had already said he didn't recall and that the prosecutor did not pursue this line of questioning, we are unwilling to characterize the question as improper and prejudicial.

■ Appellant next complains that the prosecutor learned from defense counsel at the bench conference that appellant was changing his trial testimony from what he had always told his counsel and thereupon used this knowledge in his own cross-examination of appellant. However, the record reflects that by the time of that bench conference appellant's son had also described the cause of the accident contrary to defense counsel's opening statement. In sum, the prosecutor had heard a defense witness and appellant testify in open court that the car preceding them rather than a car coming at them had caused the accident. We are unwilling to speculate that the prosecutor was alerted to the inconsistency between the defense opening statement and the defense testimony *only* because defense counsel expressly called attention to it at the bench.

■ Appellant urges finally (Brief at 20), that the prosecutor went much further than what the federal circuit court of appeals has approved in permitting a defendant to be questioned concerning an opening statement by his counsel. *Peckham v. United States*, 93 U.S.App.D.C. 136, 140, 210 F.2d 693, 697 (1953). He points out that the prosecutor here asked appellant not only whether he had heard his counsel's opening statement but also whether counsel's opening statement had been inaccurate. We are of opinion that such a line of questioning, if pursued, may come dangerously close to encroaching upon the sensitive area of attorney-client privilege and also may develop before the trier-of-fact an issue wholly extraneous to the offense charged. Here, however, the prosecutor did not probe further into defense counsel's opening statement. Moreover, appellant proceeded on cross-examination in his answers to describe again what had caused him to swerve. This testimony appeared to be perfectly consistent with the defense opening statement, though inconsistent with appellant's testimony on direct. · As in *Peckham, supra,* appellant had the opportunity to explain the inconsistency. That his explanation was elusive and itself inconsistent with earlier testimony, thus hurting his credibility, cannot be deemed reversible error under these circumstances.

We have reviewed the record and are satisfied that while the prosecutor's cross-examination appeared several times to be on the verge of opening up areas better left unexplored and potentially prejudicial, there was no overreaching by the government so as to warrant a finding of prosecutorial misconduct requiring reversal.

*Affirmed.*

NEWMAN, C. J., concurs in the result.